ZENI v ANDERSON

Docket No. 56479. Argued October 10, 1975 (Calendar No. 8).—Decided July 8, 1976.

Plaintiff Eleanor K. Zeni brought an action for damages for personal injuries received when she was struck by the automobile of defendants Karen and Donald Anderson. Plaintiff was walking with her back to oncoming traffic along a path worn in the snow on the edge of the roadway by pedestrian traffic rather than using the snow-covered sidewalk on the other side of the road. The trial court instructed the jury on the doctrine of subsequent negligence or last clear chance that even if they found the plaintiff was negligent in failing to use the sidewalk, a verdict for the plaintiff was possible if the defendant driver failed to use ordinary care with the means at hand to avoid the plaintiff after the driver knew or should have known of the plaintiff's danger. Verdict and judgment for the plaintiff in Marquette Circuit Court, Bernard H. Davidson, J. The Court of Appeals, Holbrook, P. J., and T. M. Burns, J. (R. L. Smith, J., dissenting), reversed and remanded for a new trial (Docket No. 16098). Plaintiff appeals. *Held:*

1. Violation of a penal statute (in this case the statute requiring pedestrians to walk on the sidewalk, or if there is none, on the left side of the highway facing traffic) by a plaintiff or defendant in a negligence action creates a prima facie case of negligence which may be rebutted by a legally sufficient excuse under the circumstances of the case. It would be unreasonable to adhere to an automatic rule of negligence where observance of a statute would subject a person to danger which might be avoided by disregard of the general rule.

2. When a court adopts a penal statute as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 57 Am Jur 2d, Negligence §§ 245, 246, 258, 270.
[6, 11, 13, 14] 57 Am Jur 2d, Negligence §§ 388–390.
[7–10, 15] 57 Am Jur 2d, Negligence § 394 *et seq.*
[12] 75 Am Jur 2d, Trial § 604 *et seq.*

accused of violating the statute has established a legally sufficient excuse. If the finder of fact determines such an excuse exists, the appropriate standard of care then becomes that established by the common law. Such excuses shall include, but shall not be limited to, those suggested by the Restatement of Torts, 2d, § 288A, and shall be determined by the circumstances of each case.

3. The jury was adequately instructed as to the effect of the plaintiff's failure to use the snow-covered sidewalk because the charge was to decide whether sidewalks were "provided" for the plaintiff and whether it was "practicable" for her to walk on the left-hand side of the highway facing traffic as required by statute.

4. The law of last clear chance is that a plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm, the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it; or a plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant knows of the plaintiff's situation, and realizes that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

5. The trial court must determine only whether plaintiff could fall into one of the categories to which last clear chance may be appropriately applied, and then should instruct the jury accordingly. The jury will be asked to determine if plaintiff falls within the category of a helpless or inattentive plaintiff, and then to decide if defendant's conduct meets the appropriate standard which would give plaintiff the benefit of the last clear chance doctrine. This requirement shall be applicable to all future cases in which the question of last clear chance is raised, and SJI 14.01 may no longer be given.

6. Reversible error did not result from instructions to the jury in this action to find for the plaintiff only if her negligence did not proximately contribute to her injury. The trial court, in effect, gave the jury the proper instructions and did not specifi-

cally give the jury the then-prevailing language concerning concurrent and subsequent negligence.

The decision of the Court of Appeals is reversed and that of the trial court is affirmed.

Justice Lindemer dissented on the ground that the jury found the defendant guilty of subsequent negligence and, therefore, must have found that the plaintiff was also negligent. There is no evidence upon which reasonable minds could conclude that the plaintiff's concurrent negligence had terminated so that the defendant's negligence could be subsequent as a matter of law. The doctrine · of last clear chance is not applicable to this lawsuit, and if the approach of the Restatement of Torts, 2d, is to be adopted as law, it should be adopted by the Legislature rather than by a decision in this case.

Justice Coleman dissented on the ground that the instruction to the jury was insufficient because the elements of subsequent negligence as it existed at the time of trial were not fully explained. The jury was not specifically instructed on whether the plaintiff's negligence had ceased to be a proximate cause of her injury, nor were they told that the doctrine of subsequent negligence does not apply where the negligence of both parties is concurrent and proximately causes the plaintiff's injuries. Any adoption of Restatement standards should be viewed with care and should be done only after asking for comments from the bench and bar. The doctrine of last clear chance should not be superimposed upon this case which was tried according to the doctrine of subsequent negligence.

56 Mich App 283; 224 NW2d 310 (1974) reversed.

## OPINION OF THE COURT

1. NEGLIGENCE—STATUTES—VIOLATION—PRESUMPTION.

> The violation of a penal statute by a plaintiff or defendant in a negligence action establishes a prima facie case of negligence which may be overcome by a showing of the party who violated the statute of an adequate excuse under the facts of the case.

2. NEGLIGENCE—STATUTES—VIOLATION—PRESUMPTION—REBUTTAL.

> Excuses which are adequate to rebut a presumption of negligence which arises in a civil action from a violation of a penal statute include, but are not limited to, natural hazards, sudden emergencies, incapacity to comply, lack of knowledge of the occasion for compliance, inability to comply after exercising due diligence, and avoidance of greater danger to one's self or others and shall be determined by the circumstances of each case.

3. NEGLIGENCE—STATUTES—VIOLATION—PRESUMPTION—REBUTTAL.

A statute must be reasonably construed and exceptions to a statutory edict have been created to accomplish justice by allowing rebuttal of the prima facie case of negligence that arises from violation of a penal statute if there is sufficient excuse or justification for the violation of the statute; it would be unreasonable to adhere to an automatic rule of negligence where observance of a statute would subject a person to danger which might be avoided by disregard of the general rule.

4. NEGLIGENCE—STATUTES—VIOLATION—STANDARD OF CARE.

When a court adopts a penal statute as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence; if the finder of fact determines the party accused of violating the statute has established a legally sufficient excuse, the appropriate standard of care becomes that established by the common law.

5. NEGLIGENCE—STATUTES—VIOLATION—SIDEWALKS—STANDARD OF CARE—INSTRUCTIONS TO JURY.

An instruction to the jury in a negligence action for injuries to a pedestrian walking along the side of a highway was adequate as to the effect of the plaintiff's failure to use a snow-covered sidewalk on the other side of the highway in violation of the statute relating to pedestrians on highways where the charge was to decide whether sidewalks were "provided" and whether it was "practicable" for the pedestrian to walk on the left side of the highway facing traffic which passes nearest (MCL 257.655; MSA 9.2355).

6. NEGLIGENCE—LAST CLEAR CHANCE—ELEMENTS.

The doctrine of last clear chance may be applied in a negligence action if, taking into consideration all the facts and circumstances, the following conditions exist: (1) the plaintiff is in a position or situation which has become dangerous, (2) the defendant knows, or by the exercise of ordinary care ought to know, of plaintiff's peril, (3) the defendant has the means to avoid the harm by the use of ordinary care, and (4) the defendant fails to use due care when it could be reasonably foreseen that ordinary negligence is likely to cause harm.

7. NEGLIGENCE—LAST CLEAR CHANCE—HELPLESS PLAINTIFF.

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if the plaintiff is unable to avoid the

harm by the exercise of reasonable vigilance and care, and the defendant fails to utilize with reasonable care and competence his opportunity to avoid the harm, when he knows of the plaintiff's situation and realizes or has reason to realize the peril.

8. NEGLIGENCE—LAST CLEAR CHANCE—INATTENTIVE PLAINTIFF.

A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant knows of the plaintiff's situation, and realizes that the plaintiff is inattentive and fails to utilize with reasonable care and competence his opportunity to avoid the harm.

9. NEGLIGENCE—LAST CLEAR CHANCE—INSTRUCTIONS TO JURY.

The standard jury instruction relating to the doctrine of last clear chance and concurrent and subsequent negligence is disapproved and may no longer be given (SJI 14.01).

DISSENTING OPINION

LINDEMER, J.

10. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—CONCURRENT NEGLI-GENCE.

*A finding of fact that a defendant in an action for negligence was guilty of subsequent negligence indicates that the jury must have also found that the plaintiff was negligent; the defendant, however, is entitled to a judgment as a matter of law where there is no evidence upon which reasonable minds could con-clude that the plaintiff's negligence had terminated so that the negligence of the defendant would be subsequent rather than concurrent.*

11. NEGLIGENCE—LAST CLEAR CHANCE—POLICY.

*Adoption of the doctrine of last clear chance should be left to the Legislature rather than by a decision of the Supreme Court in a case where there was no evidence that the doctrine of last clear chance would apply.*

DISSENTING OPINION

COLEMAN, J.

12. TRIAL—INSTRUCTIONS TO JURY—COURTS.

*A trial judge has the responsibility to instruct the jury correctly on the law as it is at the time of trial.*

13. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—INSTRUCTIONS TO JURY—
        STANDARD JURY INSTRUCTIONS.

    *The Standard Jury Instruction concerning the doctrine of subsequent negligence is deficient in its wording without further explanation as to the elements of subsequent negligence (SJI 14.01).*

14. NEGLIGENCE—LAST CLEAR CHANCE—CHANGE IN LAW.

    *Adoption by the Supreme Court of the standards of the doctrine of last clear chance should be viewed with care and should be done only after asking for comments from the bench and bar.*

15. NEGLIGENCE—LAST CLEAR CHANCE—SUBSEQUENT NEGLIGENCE—
        INSTRUCTIONS TO JURY.

    *The doctrine of last clear chance should not be superimposed on appeal as the standard for instructions to the jury upon a negligence case which was tried according to the doctrine of subsequent negligence.*

*Kendricks, Bordeau, Casselman & Adamini, P. C.,* for plaintiff.

*McDonald & McDonald* for defendants.

WILLIAMS, J. Two issues confront us in this negligence case. The first is the effect of an alleged violation of statute by plaintiff. The second is the sufficiency of Michigan Standard Jury Instruction 14.01 on last clear chance. We hold that violation of a statute by plaintiff or defendant creates a prima facie case from which a jury may draw an inference of negligence. The jury may also consider whether a legally sufficient excuse has been presented to refute this inference. As for the second question, we find that the approach of the American Law Institute in the second Restatement of Torts gives a clear and decisive statement of the law of last clear chance and that Michigan case law basically supports the Restatement. However, because of the specific facts of this case a new trial

is not necessary, and we therefore reverse the Court of Appeals and affirm the trial court.

## I—FACTS

The accident which precipitated this action occurred one snowy morning, March 7, 1969, when the temperature was 11° F, the sky was clear and the average snow depth was 21 inches. Plaintiff Eleanor Zeni, then a 56-year-old registered nurse, was walking to her work at the Northern Michigan University Health Center in Marquette. Instead of using the snow-covered sidewalk, which in any event would have required her to walk across the street twice to get to her job, she traveled along a well-used pedestrian snowpath, with her back to oncoming traffic.

Defendant Karen Anderson, a college student, was driving within the speed limit in a steady stream of traffic on the same street. Ms. Anderson testified that she had turned on the defroster in the car and her passenger said she had scraped the windshield. An eyewitness whose deposition was read at trial, however, testified that defendant's windshield was clouded and he doubted that the occupants could see out. He also testified that the car was traveling too close to the curb and that he could tell plaintiff was going to be hit.

Defendant's car struck the plaintiff on the driver's right side. Ms. Anderson testified she first saw the plaintiff between a car parked on the right-hand side of the road and defendant's car, and that she did not hear nor feel her car strike Ms. Zeni. The eyewitness reported seeing plaintiff flip over the fender and hood. He said when he went over to help her his knees were on or inside the white line delineating a parking space. A security

officer observed blood stains on the pavement approximately 13 feet from the curb.

Ms. Zeni's injuries were serious and included an intracerebral subdural hematoma which required neurosurgery. She has retrograde amnesia and therefore, because she does not remember anything from the time she began walking that morning until sometime after the impact, there is no way to determine whether she knew defendant was behind her. Following an extended period of convalescence, plaintiff, still suffering permanent disability, could return to work on only a part-time basis.

Testimony at trial indicated that it was common for nurses to use the roadway to reach the health center, and a security officer testified that in the wintertime it was safer to walk there than on the one sidewalk. Apparently, several days before the accident, Ms. Zeni had indeed fallen on the sidewalk. Although she was not hurt when she fell, the Director of University Security was hospitalized when he fell on the walk.

Defendant, however, maintained that plaintiff's failure to use that sidewalk constituted contributory negligence because, she said, it violated MCLA 257.655; MSA 9.2355, which requires:

"Where sidewalks are provided, it shall be unlawful for pedestrians to walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest."

The trial court instructed the jury on this point:

"Now, it is for you to decide whether on the evidence presented in this case, sidewalks were provided for the plaintiff, Mrs. Zeni, to go from parking lot 'X' [where

she parked her car before beginning her walk] to her place of work. Then, as to this statute, you shall then decide whether or not it was practicable for her to walk on the left side of the highway facing traffic which passes nearest. If you find that the plaintiff, Mrs. Zeni, violated this statute before or at the time of the occurrence, then Mrs. Zeni was negligent as a matter of law, which, of course, would bar her claim under count I, providing that her negligence was a proximate contributing cause of the occurrence."

· The trial court also instructed the jury, over defendant's objection, that even if they found plaintiff was negligent, and that her negligence was a proximate cause of her injuries, a verdict for plaintiff was still possible if defendant was subsequently negligent for failing to use ordinary care with the means at hand after she knew or should have known of plaintiff's danger.[1] Defendant ob-

---

[1] The court used Michigan Standard Jury Instruction 14.01 on last clear chance for this issue. That instruction provides:

"Even though you find *(plaintiff) (decedent)* by his own negligence placed himself in a position of danger, that will not defeat plaintiff's claim for damages if defendant failed to use ordinary care with the means at hand after defendant knew or should have known of *(plaintiff's) (decedent's)* danger."

The instruction on the effect of plaintiff's contributory negligence was based on SJI 21.02(A), including:

"The defendant has the burden of proof on his claim that the plaintiff was negligent in one or more of the ways claimed by the defendant as stated to you in these instructions; and that such negligence was a proximate contributing cause of the (injuries) (damages) to the plaintiff.

"If you find that the plaintiff was contributorily negligent as just stated in this instruction, the plaintiff has the burden of proof on his claim that (the defendant was subsequently negligent—that is, that the defendant failed to use ordinary care with the means at hand after the defendant knew or should have known of the danger in which the plaintiff was placed by his own contributory negligence) (the defendant's conduct was willful and wanton as previously explained in these instructions).

"Your verdict will be for the plaintiff, if he was (injured) (damaged), and the defendant was negligent, and such negligence was a proximate cause of his (injuries) (damages), unless the plaintiff himself was negligent and such negligence proximately contributed to his (inju-

jected to the court instructing the jury on subsequent negligence, or last clear chance, claiming that, since plaintiff's negligence in walking in the street had not come to rest prior to the time she was struck by the defendant, the instruction was inapplicable.[2] The trial court held that the question of whether negligence was concurrent was for the jury, and gave the Michigan Standard Jury Instruction 14.01:

"Even though you find Mrs. Zeni by her own negligence placed herself in a position of danger, that will not defeat her claim for damages if defendant * * * failed to use ordinary care with the means at hand after the defendant knew or should have known of Mrs. Zeni's danger."

He also instructed on burden of proof,[3] as recom-

---

ries) (damages). If the plaintiff himself was negligent and such negligence proximately contributed to his (injuries) (damages), your verdict will be for the plaintiff only if the (defendant was subsequently negligent) (defendant's conduct was willful and wanton), as previously explained in these instructions, and such (subsequent negligence) (willful and wanton conduct) proximately caused the plaintiff's (injuries) (damages)."

SJI 12.03 concerns the effect of plaintiff's violation of a statute:

"If you find that the plaintiff violated this statute before or at the time of the occurrence, then the plaintiff was negligent as a matter of law. You must then decide whether such negligence was a proximate contributing cause of the occurrence."

[2] The note on use following SJI 14.01 says:

"This instruction should be used only when there is evidence of plaintiff's precedent negligence, placing him in a position of danger. If the negligence of a plaintiff is concurrent with the negligence of a defendant, the instruction is not applicable. Also if plaintiff is in peril without negligence on his part, this instruction is not applicable because there is no precedent negligence to excuse. This instruction should not be given unless there is evidence that defendant could have avoided the accident after he knew or should have known of plaintiff's danger."

[3] "21.02(A) Burden of Proof in Negligence Cases on the Issues and Legal Effect Thereof, Including the Issues of Contributory Negligence and Subsequent Negligence (Last Clear Chance) or Willful and Wanton Misconduct

"The plaintiff has the burden of proof on each of the following propositions:

mended by the Note on Use, SJI 14.01, as well as on proximate cause.[4]

The jury found defendant "guilty of subsequent negligence" and awarded plaintiff damages of $30,-000.

---

(a) that the plaintiff was (injured) (sustained damage);

(b) that the defendant was negligent in one or more of the ways claimed by the plaintiff as stated to you in these instructions;

(c) that the negligence of the defendant was a proximate cause of the (injuries) (damages) to the plaintiff.

"The defendant has the burden of proof on his claim that the plaintiff was negligent in one or more of the ways claimed by the defendant as stated to you in these instructions; and that such negligence was a proximate contributing cause of the (injuries) (damages) to the plaintiff.

"If you find that the plaintiff was contributorily negligent as just stated in this instruction, the plaintiff has the burden of proof on his claim that (the defendant was subsequently negligent—that is, that the defendant failed to use ordinary care with the means at hand after the defendant knew or should have known of the danger in which the plaintiff was placed by his own contributory negligence) (the defendant's conduct was willful and wanton as previously explained in these instructions).

"Your verdict will be for the plaintiff, if he was (injured) (damaged), and the defendant was negligent, and such negligence was a proximate cause of his (injuries) (damages), unless the plaintiff himself was negligent and such negligence proximately contributed to his (injuries) (damages). If the plaintiff himself was negligent and such negligence proximately contributed to his (injuries) (damages), your verdict will be for the plaintiff only if the (defendant was subsequently negligent) (defendant's conduct was willful and wanton), as previously explained in these instructions, and such (subsequent negligence) (willful and wanton conduct) proximately caused the plaintiff's (injuries) (damages).

"Your verdict will be for the defendant, if the plaintiff was not (injured) (damaged); or if the defendant was not negligent; or if negligent, such negligence was not a proximate cause of the (injuries) (damages); or if the plaintiff himself was negligent and such negligence was a proximate contributing cause of his (injuries) (damages), and the (defendant was not subsequently negligent) (defendant's conduct was not willful and wanton) as previously explained in these instructions."

[4] "15.01 Definition of Proximate Cause Instruction

"When I use the words, 'proximate cause' I mean first, that there must have been a connection between that conduct of the defendant which plaintiff claims was negligent and the injury complained of by the plaintiff, and second, that the occurrence which is claimed to have produced that injury was a natural and probable result of such conduct of the defendant."

The Court of Appeals, in a thorough opinion, *Zeni v Anderson,* 56 Mich App 283; 224 NW2d 310 (1974), found first it was a question of fact whether MCLA 257.655; MSA 9.2355 relating to failure to use a sidewalk applied to the case,[5] 56 Mich App 296, and whether if Ms. Zeni were found to be negligent, such negligence was a proximate cause of her injuries. 56 Mich App 297–298. Further, it was not incorrect to instruct on last clear chance. However, the Court of Appeals found that the instruction given was incorrect. Holding that the doctrine of last clear chance "does not apply where the negligence of both parties is concurrent and proximately causes plaintiff's injury", 56 Mich App 301, the Court found that "SJI 14.01 is in its wording deficient without further explanation", 56 Mich App 302, inasmuch as it does not advise the jury that plaintiff's negligence must cease to operate as a proximate cause of the ensuing injury. The Court of Appeals therefore reversed and remanded for a new trial.

We granted leave to appeal January 29, 1975. 393 Mich 804.

## II—EFFECT OF VIOLATION OF STATUTE

An analysis of the Michigan cases indicates that the real Michigan rule as to the effect of violation of a penal statute in a negligence action[6] is that

___

[5] The dissenting member of the panel would have found plaintiff negligent as a matter of law and would have remanded for entry of judgment *non obstante veredicto,* holding there was nothing in the record to suggest it would have been impracticable for plaintiff to walk on the sidewalk, and that reasonable minds could not differ on whether plaintiff's negligence was concurrent. 56 Mich App 283, 303–304.

[6] Such a statute is relevant to a civil case "even though the statute does not, as is normally the case, contain a provision respecting civil liability." *Thaut v Finley (On Rehearing)*, 50 Mich App 611, 613; 213 NW2d 820 (1973). This is true whether the issue is the negligence of

such violation creates only a prima facie case from which the jury may draw an inference of negligence. It is true that a number of passages in cases speak of negligence per se almost in terms of strict liability, but closer examination of the application of the rule reveals that Michigan does not subscribe to such a harsh dogma.

## A. *Violation of Statute as Rebuttable Presumption*

In a growing number of states, the rule concerning the proper role of a penal statute in a civil action for damages is that violation of the statute which has been found to apply to a particular set of facts establishes only a prima facie case of negligence, a presumption which may be rebutted[7] by a showing on the part of the party violating the statute of an adequate excuse[8] under the facts and

---

defendant, or the contributory negligence of plaintiff. *Haynes v Seiler,* 16 Mich App 98, 102; 167 NW2d 819 (1969). *See,* SJI 12.01, Violation of Statute by Defendant; SJI 12.03, Violation of Statute by Plaintiff—Contributory Negligence; Prosser, Torts (4th ed), § 36, p 203.

[7] "This latter view is a specific application of the hornbook rule of procedure that a trial judge may direct a verdict on an issue on which reasonable jurors cannot differ. Substantively, this view is also a recognition that prudent men do not break the criminal law without justification. The assurance with which a trial judge may direct a verdict against a defendant who has offered no proof tending to justify his breach of the criminal law is based on the warning qualities of penal statutes and on the legislature's opportunity to investigate before enacting proscriptions." Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 Colum L Rev 21, 35 (1949).

[8] Although not intended to be exclusive, the Restatement Torts, 2d, suggests some possible excuses:

"(a) [T]he violation is reasonable because of the actor's incapacity;

"(b) he neither knows nor should know of the occasion for compliance;

"(c) he is unable after reasonable diligence or care to comply;

"(d) he is confronted by an emergency not due to his own misconduct;

"(e) compliance would involve a greater risk of harm to the actor or to others." 2 Restatement of Torts 2d, § 288A, p 33.

See *Breitkreutz v Baker,* 514 P2d 17, 24 (Alas, 1973) (accepting the Restatement excuses).

circumstances of the case. The excuses may not necessarily be applicable in a criminal action, since, in the absence of legislatively-mandated civil penalties, acceptance of the criminal statute itself as a standard of care in a civil action is purely discretionary. See Comment and Illustrations, 2 Restatement Torts, 2d, § 288A, pp 33–37.

Michigan cases have in effect followed this rule. For example, over a 65-year period, cases concerning the effect in a negligence action of violation of the statute requiring vehicles to keep to the right side of the road have almost consistently adopted a rebuttable presumption approach, even though the language of the statute is not written in terms of a presumption.[9]

Thus, in *Tyler v Nelson,* 109 Mich 37, 41; 66 NW 671 (1896), we approved a charge to the jury that even though the "law of the road" required driving to the right,

"if, *under all the circumstances, it was apparently safer for him to turn to the left, and he did only what a man of ordinary prudence would have done under similar circumstances, then he had a right to disregard the law* of the road in that particular, and his turning to the left would not in itself be negligence." (Emphasis added.)

Again, in *Buxton v Ainsworth,* 138 Mich 532, 536; 101 NW 817 (1904), although the statute was not specifically mentioned, we said:

---

[9] For example, the statute involved in *Corey v Hartel, infra,* said, in relevant part,

"Whenever any persons shall meet each other on any bridge or road, traveling with carriages, wagons, carts, sleds, sleighs, or other vehicles, each person shall seasonably drive his carriage or other vehicle to the right of the middle of the traveled part of such bridge or road, so that the respective carriages, or other vehicles aforesaid, may pass each other without interference." 1915 CL 4592.

"As an abstract proposition, the driver of a vehicle about to meet another team is presumptively at fault if he fails to turn to the right of the center of the wrought portion of the highway; *but if the presumption that he is thus at fault is overcome by the evidence of circumstances,* or if it appears that the fault, if found, did not essentially contribute to the injury, the fact that he may have been in a sense out of place does not place him beyond the protection of the law." (Emphasis added.)

By the time we decided *Corey v Hartel,* 216 Mich 675, 680; 185 NW 748 (1921), it was clear that the law was,

"While a driver who does not keep to the right of the center is presumptively at fault, *the circumstances attending such meeting may be such as to overcome the presumption,* or the evidence may establish the fact that such act of negligence did not essentially contribute to the injury." (Emphasis added.)[10]

This is still the approach under the successor statute, MCLA 257.634; MSA 9.2334, with the only question being not whether an excuse would be acceptable, but what an acceptable excuse would be.[11]

We find a similar approach to the assured clear

---

[10] *See also, Ross v Michigan Mutual Auto Insurance Co,* 224 Mich 263, 269-270; 195 NW 88 (1923) (burden of proof on party on wrong side of the road to show justifying circumstances); *Sanderson v Barkman,* 264 Mich 152, 154; 249 NW 492 (1933) ("If it was necessary for defendants to drive upon the wrong side of the highway, in violation of the provisions of the statute, it was incumbent upon defendants to show the circumstances of such necessity.").

[11] "[T]he mere fact that an automobile is on the wrong side of the highway at the time of collision does not of itself make the driver thereof guilty of negligence as a matter of law." *Martiniano v Booth,* 359 Mich 680, 687; 103 NW2d 502 (1960) (suggesting that a natural obstacle such as a rut or a path of ice would provide sufficient excuse). "[T]he statute requiring a vehicle to be driven on the right side of the highway, should be applied in a reasonable manner taking into consideration all of the facts and surrounding circumstances *i.e.,* how

distance statute.[12] In *Patzer v Bowerman-Halifax
Funeral Home,* 370 Mich 350, 352; 121 NW2d 843
(1963), we recognized, "Its [the statute's] applica-
tion to variant evidentiary circumstances, once
visibly to the rigid [interpretation] [citing *Lett v
Summerfield & Hecht,* 239 Mich 699, 703; 214 NW
939 (1927)], has by force of inexorably developing
traffic conditions been modified in recent years to
one of 'reasonable construction' ". In that case we
found that extraordinary blizzard conditions in our
Upper Peninsula made it safest for drivers to
follow the yellow flashing light of the snow plow.
"To stop for want of driving vision or other reason
is to invite a collision from the rear. * * * [I]t isn't
possible at all times to obey the letter of the
enactment requiring an assured clear distance
ahead, and still obey the variable and jury-deter-
minable requirement of due care." 370 Mich 355.

Thus, while it has been said that violation of
this statute constitutes negligence per se, *Mc-
Kinney v Anderson,* 373 Mich 414, 419; 129 NW2d
851 (1964),[13] such presumption may be overcome.
The range of acceptable excuses is apparently not
limited to *Patzer*-type natural hazards, or *Mc-*

the driver got on the wrong side of the road and whether it was
caused by an emergency situation." *Hackley Union National Bank v
Warren Radio Co,* 5 Mich App 64, 73; 145 NW2d 831 (1966). "[I]t
became the burden of defendant to introduce that measure of exculpa-
tory proof which would clearly explain or excuse his violation of the
statute." *Morton v Wibright,* 31 Mich App 8, 13; 187 NW2d 254
(1971).

[12] "Any person driving a vehicle on a highway shall drive the same
at a careful and prudent speed not greater than nor less than is
reasonable and proper, having due regard to the traffic, surface and
width of the highway and of any other condition then existing, and no
person shall drive any vehicle upon a highway at a speed greater
than will permit him to bring it to a stop within the assured, clear
distance ahead." MCLA 257.627; MSA 9.2327.

[13] Despite characterization of such statutory violations as negligence
per se, *McKinney* applied the excuse of sudden emergency as the first
car in a rear-end collision had stopped suddenly without signaling.

*Kinney*-type sudden emergencies, for, as we said in
*Sun Oil Co v Seamon,* 349 Mich 387, 411; 84 NW2d
840 (1957) "the statute must be reasonably con-
strued," 349 Mich 411, and "If the emergency
exception[14] seems unduly narrow in scope and
phrasing we should re-examine its content". 349
Mich 412.

The Michigan rebuttable presumption approach
is not restricted to these statutes. The Standard
Jury Instruction covering the effect of the viola-
tion of any penal statute on a negligence case asks
the jury to consider possible excuses if such evi-
dence is presented. Although the text of the in-
struction is couched in terms of the emergency
exception,[15] the Note on Use provides that the
instruction "should be modified for other categor-
ies of excused violations." For such possible ex-
cuses, the Comment refers to the five categories of
excuses suggested by the Restatement, fn 8, *supra.*
The Restatement itself has suggested that this list
is not all-inclusive.

We think the test of the applicable law was well
stated by our Brother Justice FITZGERALD when he
was a judge on the Court of Appeals. In *Lucas v
Carson,* 38 Mich App 552; 196 NW2d 819 (1972),
he analyzed a case where, in spite of defendant's
precautions, her vehicle "inexplicably slid into the
rear of plaintiff's stopped car" where plaintiff was
waiting at a traffic signal. 38 Mich App 554. Plain-

---

[14] A sudden emergency not of defendant's own making was found to
be applicable in *Seamon.*

[15] "However, if you find that defendant was confronted with a
sudden emergency not of his own making and, if you find that he
used ordinary care and was still unable to avoid the violation because
of such emergency, then his violation is excused.

"If you find that defendant violated this statute and that the
violation was not excused, then you must decide whether such negli-
gence was a proximate cause of the occurrence." SJI 12.01(A), Ex-
cused Violation of Statute by Defendant. *See* SJI 12.03(A), Excused
Violation of Statute by Plaintiff.

tiff alleged that defendant violated MCLA 257.627;
MSA 9.2327, the assured clear distance statute, as
well as MCLA 257.643; MSA 9.2343[16] and MCLA
257.402; MSA 9.2102.[17] Although the language of
the latter two statutes raises the possibility of
excuse, we think our review of the precedents
indicates *Lucas* was correct in not distinguishing
among the statutes as to acceptable standards of
excuse, and in not restricting the acceptable
gamut of excuse possibilities.

First, in analyzing whether the presumption of
negligence attributed to a rear-end collision had
been rebutted in the case before them, the Court
of Appeals acknowledged that the usual grounds
for rebuttal, sudden emergency, did not appear in
this case. In effect accepting defendant's conten-
tion that the doctrine of sudden emergency was
not the sole basis for rebutting a presumption of
negligence, the Court held:

"The general rule appears to be that evidence re-
quired to rebut this presumption *as a matter of law*
should be positive, unequivocal, strong, and credible. In
the case at bar, defendant driver contended that she
was at all times driving in a reasonable and prudent
manner. * * * [T]here was sufficient evidence at least to
generate a jury question regarding rebutting of the
presumption." 38 Mich App 552, 557 (citations omitted;
emphasis by the Court).

As to the other alleged statutory violations,
Justice FITZGERALD observed:

_____

[16] "The driver of a motor vehicle shall not follow another vehicle
more closely than is reasonable and prudent * * * ".

[17] "In any action, in any court in this state when it is shown by
competent evidence, that a vehicle traveling in a certain direction,
overtook and struck the rear end of another vehicle proceeding in the
same direction, or lawfully standing upon any highway within this
state, the driver or operator of such first mentioned vehicle shall be
deemed prima facie guilty of negligence."

" 'Whereas, at one time, the application of the statute (assured clear distance) was strictly construed and applied as evidenced by the rule in the case of *Lewis v Yund,* 339 Mich 441 [64 NW2d 690] (1954), recent cases indicate that *the statute must be reasonably construed and exceptions to the statutory edict have been created to accomplish justice,* including bringing the assured clear distance rule to qualification by the test of due or ordinary care, exercised in the light of the attending conditions. *Sun Oil Co v Seamon,* 349 Mich 387 [84 NW2d 840] (1957); *Nass v Mossner,* 363 Mich 128 [108 NW2d 881] (1961); *Dismukes v Michigan Express, Inc,* 368 Mich 197 [118 NW2d 238] (1962).' [quoting *Hackley Union National Bank & Trust Co v Warren Radio Co,* 5 Mich App 64, 71; 145 NW2d 831 (1966)].

"See *Hendershot v Kelly,* 11 Mich App .173 [160 NW2d 740] (1968). The qualification applying to the assured-clear-distance statute as enunciated in the above quotation is also applicable to the rule against following too closely. *Hendershot v Kelly, supra.*

"Since there was at least some evidence that defendant driver was operating her vehicle in a reasonable and prudent manner prior to the accident, the question of whether or not defendant violated one or both of these statutes was properly a factual one for the jury to resolve." 38 Mich App 552, 558 (emphasis added).

This is the approach we follow today. For one, it recognizes that the Legislature has spoken in a particular area, and that,

"The legislative process includes opportunities to arrive at informed value judgments superior to the opportunities of judges and jurors. Furthermore, the legislative judgment is pronounced in advance and tends to educate the public." 49 Colum L Rev 21, 47.

Particularly in the area of health and safety regulations, we find ourselves attempting "to further the ultimate policy for the protection of individuals which they find underlying the statute." Pros-

ser, *supra,* p 191.[18] Then, too, it is felt that "the reasonably prudent man usually tries to comply" with the criminal law. 49 Colum L Rev 21, 33.[19]

Another attraction of this approach is that it is fair. "If there is sufficient excuse or justification, there is ordinarily no violation of a statute and the statutory standard is inapplicable." *Satterlee v Orange Glenn School Dist of San Diego County,* 29 Cal 2d 581, 594; 177 P2d 279, 286 (1947) (dissenting in part). It would be unreasonable to adhere to an automatic rule of negligence "where observance would subject a person to danger which might be avoided by disregard of the general rule". *Tedla v Ellman,* 280 NY 124, 131–132; 19 NE2d 987, 991 (1939).

The approach is logical. Liability without fault is not truly negligence, and in the absence of a clear legislative mandate to so extend liability, the courts should be hesitant to do so on their own. Because these are, after all, criminal statutes, a court is limited in how far it may go in plucking a statute from its criminal milieu and inserting it into the civil arena. The rule of rebuttable presumption has arisen in part in response to this concern, and in part because of the reluctance to go to the other extreme and in effect, discard or disregard the legislative standard.[20]

[18] However, Prosser calls such an implied intent to provide for tort liability "[i]n the ordinary case * * * pure fiction concocted for the purpose". Prosser, p 191.

[19] Still another rationale is that the criminal statute establishes "a standard of care greater than that required by the common law" and is therefore a more accurate test. 57 Am Jur 2d, Negligence, § 242, p 626.

[20] For example, Justice Traynor, dissenting to the opinion setting forth the California rule of rebuttable presumption, found it undesirable because it might be similar to the approach in which the jury by considering a violation of a statute as only evidence of negligence, is free to approve "conduct that the Legislature has declared so dangerous as to call for criminal punishment". *Satterlee v Orange Glenn*

## B. *Violation of Statute as Negligence Per Se*

While some Michigan cases seem to speak of negligence per se as a kind of strict liability, *Holbert v Staniak,* 359 Mich 283, 290; 102 NW2d 186 (1960), an examination indicates that there are a number of conditions that attempt to create a more reasonable approach than would result from an automatic application of a per se rule.

The first such condition is that the penal standard does not have to be applied in the civil action. Absent explicit legislative language creating civil liability for violation of a criminal statute, a court is free to exercise its discretion and either adopt the legislative standard,[21] or retain the common law reasonable person standard of care. *LaCroix v Grand Trunk WR Co,* 379 Mich

*School District,* 29 Cal 2d 581, 596; 177 P2d 279, 287 (1947) (dissenting in part).

[21] Thus, 2 Restatement Torts, 2d, § 286, Comment d, p 26, observes:

"[T]he initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action.

"Where criminal legislation, although constitutional, is entirely unreasonable or inappropriate—as where, for example, there is an automobile speed limit of six miles an hour, enacted in 1908 and never repealed—the court has no choice, in a criminal prosecution, but to apply the law so laid down. But since it is under no such compulsion in a civil suit, it may still treat the provision as inapplicable for the purposes of defining negligence in such a suit. In doing so, it may rely on the justification that the legislature has indicated no intention that it shall be so applied, since nothing more than a criminal penalty has been provided. * * *

"On the other hand, the court is free, in making its own judicial rules, to adopt and apply to the negligence action the standard of conduct provided by such a criminal enactment or regulation. This it may do even though the provision is for some reason entirely ineffective for its initial purposes, as where a traffic signal is set up under an ordinance which never has been properly published and so for the purposes of a criminal prosecution is entirely void. *The decision to adopt the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so.*" (Emphasis supplied.)

417, 438–439; 152 NW2d 656 (1967) (concurring opinion). *See e.g., Rudes v Gottschalk,* 159 Tex 552; 324 SW2d 201, 204–205 (1959); *Clinkscales v Carver,* 22 Cal 2d 72; 136 P2d 777, 778 (1943); *Raymond v Riegel Textile Corp,* 484 F2d 1025, 1028 (CA1, 1973); *Whoolery v Hagan,* 247 Md 699; 234 A2d 605, 609 (1967); Prosser, *supra,* p 200; Murchison, *Negligence per se and Excuse for a Statutory Violation in Texas,* 5 St Mary's L J 552 (1973). By its interpretation of the statutory purpose[22] a court may in effect excuse an individual from the consequences of violating a statute. For example, the court may find the statute's purpose was not to protect the person allegedly injured, or, even if it was, that the harm suffered was not what the Legislature designed the statute to do.

Once this threshold is crossed and the court determines that the statute is applicable to the facts in the case before it, *e.g., Hardaway v Consolidated Paper Co,* 366 Mich 190, 196–197; 114

---

[22] This is usually done by applying the statutory purpose doctrine:

" 'The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

" '(a) *to protect a class of persons which includes the one whose interest is invaded, and*

" '(b) to protect the particular interest which is invaded, and

" '(c) to protect that interest against the kind of harm which has resulted, and

" '(d) to protect that interest against the particular hazard from which the harm results.' " 2 Restatement Torts, 2d, § 286, quoted in 379 Mich 417, 439, fn 3.

Thus, the Note on Use for SJI 12.01, Violation of Statute by Defendant, provides:

"This instruction should be given only if:

"1. the statute is intended to protect against the injury involved; and

"2. the plaintiff is within the class intended to be protected by the statute; and

"3. The evidence will support a finding that the violation was a proximate cause of the occurrence."

This remains true for plaintiff, except that "the statute is intended to protect against the result of the violation". Note on Use, SJI 12.03.

NW2d 236 (1962),[23] liability still does not attach unless the finder of fact determines that the violation of the statute is the proximate cause of the injury. 366 Mich 197. *Holmes v Merson,* 285 Mich 136, 140; 280 NW 139 (1938); *Kubasinski v Johnson,* 46 Mich App 287, 289–290; 208 NW2d 74, 76 (1973); *Shepherd v Short,* 53 Mich App 9, 11; 218 NW2d 416 (1974); *Selmo v Baratono,* 28 Mich App 217, 226; 184 NW2d 367 (1970). Even then, liability is not automatic, for defenses such as contributory negligence still apply. *Syneszewski v Schmidt,* 153 Mich 438, 441; 116 NW 1107 (1908).

Despite such limitations, the judge-made rule of negligence per se has still proved to be too inflexible and mechanical to satisfy thoughtful commentators and judges. It is forcefully argued that no matter how a court may attempt to confine the negligence per se doctrine, if defendant is liable despite the exercise of due care and the availability of a reasonable excuse, this is really strict liability, and not negligence. Prosser, The Law of Torts (4th ed), § 36, p 197. Since it is always possible that the Legislature's failure to deal specifically with the question of private rights was not accidental, and that there might have been no legislative intent to change the law of torts,[24] such treatment of the statute may well be a gross perversion of the legislative will.[25] It is trouble-

---

[23] "The sole question in this case is whether or not the statute relied upon applied to the defendant." 366 Mich 190, 196; 114 NW2d 236.

[24] It has been suggested that:

" '[W]hen a damage suit judge refuses to rule that breach of a criminal statute is negligence * * * he is not disobeying the legislature's command, for the legislature has ordered criminal responsibility—not civil liability.' " Morris, Studies in the Law of Torts, quoted in *Phoenix Refining Co v Powell,* 251 SW2d 892, 896 (Tex Civ App, 1952).

[25] Sometimes, too, when a statute may be ineffective to carry out the express legislative purpose, as, for example, when it is found to be

some, too, that "potentially ruinous civil liability" may follow from a "minor infraction of petty criminal regulations", 49 Colum L Rev 21, 23, or may, in a jurisdiction burdened by contributory negligence, serve to deprive an otherwise deserving plaintiff of a much-needed recovery.

The rule, too, may have unfortunate effects on the administration of justice.[26] Justice TALBOT SMITH suggests that adoption of the statutory standard improperly takes from the jury its function of setting the standard of care. *Richardson v Grezeszak,* 358 Mich 206, 235; 99 NW2d 648 (1959) (for affirmance). He also suggests that in order to avoid what may be an unfair result, courts may attempt to distort one of the negligence per se conditions, and create instead a negligence per se loophole. This is particularly true, he contends, of the element of proximate cause.

"The difficulty with the proximate cause solution in

ineffective for some reason, it may still be applied in civil actions. This creates a situation where the actual targets of the legislative scheme cannot be reached, but others, the civil violators, whom the Legislature may not have had in mind at all, are the only ones affected by the statute.

*See e.g., Clinkscales v Carver,* 22 Cal 2d 72; 136 P2d 777 (1943) (civil liability found where criminal prosecution was impossible because of improper publication). In *Tabinski v A Harvey's Sons Mfg Co,* 168 Mich 392; 134 NW 653 (1912), although the statute stated that guards shall be placed on gears "when deemed necessary by the factory inspector", 168 Mich 392, 395, we held that "the use of the word [necessary] here can[not] be permitted to modify the effect of the express mandate contained in the earlier part of the section". 168 Mich 392, 397.

[26] "The doctrine of negligence per se purports to rob the judge of judicial functions. It places responsibilities on a legislature that could not possibly conceive of all cases to which its proscription might apply and that has not provided for civil liability, and that, therefore, surely has not considered proper limitations and excuses. At times violation of the criminal law is not unreasonable. If the doctrine of negligence per se is applied obdurately to reasonable violators their liability can be justified only on some basis other than fault—if at all." 49 Colum L Rev 21, 29.

most cases, well illustrated by the facts before us, is
that its use requires the employment of a fiction. When
an automobile strikes a pedestrian walking along the
highway we have a causal relationship as immediate
and direct as that between the bullet and the target,
the fist and the jaw. Harper and James comment with
much force that 'the notion of proximate cause has no
legitimate application here. Nevertheless it has some-
times been used as a confused and undiscriminating
phrase to cover an escape from the rigors of the negli-
gence *per se* rule.' Fictions, of course, are often em-
ployed in the law and are sometimes necessary, but
they are dangerous servants since they so often become
our masters obscuring thought and cloaking the reason-
ing of the courts. It is preferable that we disclose and
discuss the issues directly, not in metaphysical terms.
We have commented heretofore upon the indiscriminate
use of the term 'proximate cause.' We noted, in *Glinski
v Szylling,* 358 Mich 182, 197 [99 NW2d 637 (1959)], its
use, in that case, as a term synonymous with 'cause in
fact.' Here its use cloaks a different problem, the effect
upon civil liability of a regulatory statute. It was Dean
Green who observed many years ago that 'The attempt
which common-law courts have made to resolve every
major problem of legal liability in tort into terms of
causal relation marks the most glaring and persistent
fallacy in tort law.' " *Richardson v Grezeszak,* 358 Mich
206, 234–235; 99 NW2d 648 (1959) (SMITH, J.) (notes
omitted).[27]

Similar judicial liberties may be taken with the
meaning of statutory terms, in order to avoid the

[27] *E.g., Ertzbischoff v Smith,* 286 Mich 306, 311–312; 282 NW 159
(1938) (Even though 10-year-old boy rode his bicycle after dark with-
out lights, and was hit by a car and killed when defendant did not see
him in time to stop, we held that it was a question for the jury
whether the presence of the light would have made any difference, a
slightly different and, within the circumstances of the case, a more
realistic way of putting the proximate cause question. " 'It is there-
fore a matter of fact for you to determine whether or not the bicycle
was properly lighted or equipped, and if not, whether or not this lack
contributed to the happening of the accident.' ").

results from literal interpretation.[28] Surely, the prevalence of such devices, combined with the increasing dominance of the rebuttable presumption standard, indicate the negligence per se approach just does not work.

## C. Violation of Statute as Evidence of Negligence

Just as the rebuttable presumption approach to statutory violations in a negligence context apparently arose, at least in part, from dissatisfaction with the result of a mechanical application of the per se rule, a parallel development in our state with respect to infractions of ordinances, and of administrative regulations, has been that violations of these amount to only evidence of negligence. *Rotter v Detroit United R Co,* 205 Mich 212, 231; 171 NW 514 (1919); *Banzhof v Roche,* 228 Mich 36, 40; 199 NW 607 (1924); *Mills v A B Dick Co,* 26 Mich App 164, 168; 182 NW2d 79 (1970); *Douglas v Edgewater Park Co,* 369 Mich 320, 328; 119 NW2d 567 (1963). We have not, however, chosen to join that small minority[29] which has decreed that violation of a statute is only evidence

---

[28] In *Bird v Gabris,* 53 Mich App 164; 218 NW2d 871 (1974), the Court of Appeals refused to construe the word "pedestrian" in the same statute involved in the instant case, MCLA 257.655; MSA 9.2355, to include "every person afoot on a public highway", 53 Mich App 164, 167; 218 NW2d 871, and instead found that since plaintiff who was standing on either the shoulder or the traveled part of the road attempting to flag an on-coming car "was not using the highway for the purpose of travelling" " 'afoot' ", 53 Mich App 164, 168, as per the definition of pedestrian in MCLA 257.39; MSA 9.1839 [" 'Pedestrian' means any person afoot.' ", quoted at 53 Mich App 164, 166], the statute was not applicable.

[29] Although Prosser characterizes this as a "considerable minority", he still indicates only four states have accepted the approach: Maryland, Massachusetts, New Jersey and Arkansas. Prosser, p 201, fn 27. One of these, Maryland, has a view which probably is closer to that of the "rebuttable presumption" school, discussed *supra. New Amsterdam Casualty Co v Novick Transfer Co,* 274 F2d 916, 923, and cases cited fn 4 (CA4, 1960).

of negligence. In view of the fairness and ease with which the rebuttable presumption standard has been and can be administered, we believe the litigants are thereby well served and the Legislature is given appropriate respect.

## D. Application of Statutory Standard to This Case

We have seen, therefore, that while some of our Michigan cases seem to present negligence per se as an unqualified rule, the fact of the matter is that there are a number of qualifications which make application of this rule not really a per se approach at all.[30] Not only must the statutory purpose doctrine and the requirement of proximate cause be satisfied, but the alleged wrongdoer has an opportunity to come forward with evidence rebutting the presumption of negligence.

An accurate statement of our law is that when a court adopts a penal statute as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a legally sufficient excuse. If the finder of fact determines such an excuse exists, the appropriate standard of care then becomes that established by the common law. Such excuses shall include, but shall not be limited to, those suggested by the Restatement Torts, 2d, § 288A, and shall be determined by the circumstances of each case.

In the case at bar, moreover, the statute itself provides a guideline for the jury, for a violation

---

[30] A strict per se rule may perhaps be applicable in certain limited cases, certainly in cases where the Legislature itself has set forth rules of strict liability, but we are not confronted with such a statute today.

will not occur when it is impracticable to use the sidewalk or to walk on the left side of a highway. This is ordinarily a question for the finder of fact,[31] *Bird v Gabris,* 53 Mich App 164, 167; 218 NW2d 871 (1974), and thus the statute itself provides not only a legislative standard of care which may be accepted by the court, but a legislatively mandated excuse as well.

In the instant case the court charged the jury:

"Now, it is for you to decide whether on the evidence presented in this case, sidewalks were provided for the plaintiff, Mrs. Zeni, to go from parking lot 'X' to her place of work. Then, as to this statute, you shall then decide whether or not it was practicable for her to walk on the left side of the highway facing traffic which passes nearest. If you find that the plaintiff, Mrs. Zeni, violated this statute before or at the time of the occurrence, then Mrs. Zeni was negligent as a matter of law, which, of course, would bar her claim under count I, providing that her negligence was a proximate contributing cause of the occurrence."

Thus, we find the jury was adequately instructed as to the effect of the violation of this particular statute on plaintiff's case.

### III—LAST CLEAR CHANCE

The jury in the case at bar apparently found the plaintiff[32] contributorily negligent, but still

[31] "It is not enough, however, to call this statute into operation, merely that a sidewalk be constructed at the spot in question. It must be usable. It may be partially destroyed by neglect or the elements, or it may be covered by water, sand, or snow. In such event the pedestrian who insists on following its probable course might well be heedless of his own safety. The usability of the walk is ordinarily * * * a question of fact." *Martin v Leslie,* 345 Mich 305, 309; 76 NW2d 71 (1956).

[32] The jury found "defendant guilty of subsequent negligence" thereby implying a finding that plaintiff had been contributorily negligent.

awarded damages to her because of a finding that defendant had the last clear chance to avoid the accident. The Court of Appeals found, however, that SJI 14.01, used by the trial judge to instruct the jury on last clear chance, was fatally deficient inasmuch as it did not require the jury to find that the negligence of plaintiff had come to rest before the doctrine could be applied. Although the SJI Note on Use provides that the instruction could not be given if plaintiff's negligence is concurrent with that of defendant, the SJI itself does not explain this facet to the jury. This finding of the Court of Appeals highlights one of the cloudiest areas of our negligence law, but it affords us an opportunity to demystify it.

This last clear chance case and the learned and involved arguments and briefs of counsel provoke us to revisit *Davies v Mann,* 10 M & W 546; 152 Eng Rep 588; 19 Eng Rule Cas 190 (Ex 1842), where the last clear chance doctrine was originally propounded. As will be recalled, plaintiff there negligently tethered his jackass on the highway and defendant's subsequent negligence in driving his carriage at a smart rate into the animal killed the poor beast. Despite plaintiff's antecedent negligence, defendant was held responsible for his own subsequent negligence, and plaintiff recovered. In this opinion we examine the state of the law of last clear chance in Michigan and the gloss added to the original doctrine. We find that the approach of the American Law Institute in the Second Restatement of Torts gives a clear and decisive statement of this law, brushing away some of the barnacles with which time has encrusted the doctrine, and we find that Michigan case law is basically supportive of the Restatement.

## IV—STATE OF LAW OF LAST CLEAR CHANCE IN MICHIGAN

*Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 552; 166 NW2d 46, 49 (1968), feelingly described the state of the law of last clear chance as follows:

"This appeal brings to the fore one of the most misunderstood doctrines in the law of negligence. There is apparent confusion in almost every cited case regarding the doctrine of gross negligence."

*Papajesk* then went on to say:

"The *LaCroix Case [LaCroix v Grand Trunk W R Co,* 379 Mich 417; 152 NW2d 656 (1967)], p 423 quotes the *Gibbard Case* to the effect that 'such gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or willful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule.' A legal term with this number of aliases, each of which is given a precise meaning by case law and legal definition was destined for confusion." 14 Mich App 550, 555; 166 NW2d 46.

*Papajesk* wound up stating a straightforward rule, which is quite similar to *Davies v Mann, supra.* The rule stated by *Papajesk* is:

"To determine the existence of gross negligence all the facts and circumstances must be taken into consideration to ascertain if the following conditions exist: (1) Plaintiff is in a position or situation which has become dangerous. (2) Defendant knows or by the exercise of ordinary care ought to know, of plaintiff's peril. (3) Defendant must have the means to avoid the harm by the use of ordinary care. (4) Failure of defendant to use due care when it could be reasonably foreseen that

ordinary negligence is likely to cause harm." 14 Mich
App 550, 556; 166 NW2d 46, 49.

*Papajesk* is fairly accurate as far as it goes, but
there are other problems connected with last clear
chance which have created marches and counter-
marches that have caused some of the confusion in
this branch of the law.

On the one hand, some of the cases have limited
plaintiff's ability to recover by requiring the origi-
nal negligence to cease as a proximate cause of the
accident. On the other hand, some courts have
found for plaintiff even when his or her negligence
has not ceased, by determining that contributory
negligence was not applicable because defendant
was willful, wanton or reckless.

In *LaCroix v Grand Trunk W R Co,* 379 Mich
417, 424; 152 NW2d 656 (1967), it was said:

" 'If the negligence of a plaintiff is concurrent with
the negligence of a defendant, the rule as to the ante-
cedent negligence of plaintiff * * * does not apply. The
doctrine of gross, subsequent or discovered negligence
may not be invoked to excuse concurrent negligence of
a plaintiff.' " (Plaintiff was denied relief on the facts.)

Likewise *Davidson v City of Detroit,* 307 Mich
420, 430–431; 12 NW2d 413 (1943) states:

"In order to apply the doctrine of subsequent negli-
gence * * * plaintiff's negligence * * * must have
ceased to operate as the proximate cause of the
accident * * * ."

Plaintiff was denied relief and the court said:

"Plaintiff has failed to show that the plaintiff's negli-
gence had ceased to operate as the proximate cause of
the accident." 307 Mich 420, 431; 12 NW2d 413.

See *Shafkind v Kroll,* 367 Mich 42, 45; 116 NW2d 58 (1962); *Churukian v LaGest,* 357 Mich 173, 181; 97 NW2d 832 (1959).

A somewhat similar limitation of plaintiff is found in several of the old "railway cases" which require that if plaintiff has discovered the peril, plaintiff must do everything possible to extricate himself or herself from the dangerous position. Thus, in *Laethem v Fort Wayne & B I R Co,* 100 Mich 297, 301; 58 NW 996 (1894), the court observed:

"[I]t was a question of fact for the jury to determine whether the plaintiff, under the circumstances, should have been out of the way when the car reached that point, or whether the accident occurred wholly by reason of the negligence of the driver of the car."

See *Labarge v Pere Marquette R Co,* 134 Mich 139, 146; 95 NW 1073 (1903). ("Thus it is said that while one discovered by an engineer, negligently walking on a railroad, may be entitled to recover, if the engineer, apprehending the danger, makes no effort to avert it, he cannot recover if, after becoming aware of the danger, he makes no proper effort to escape.") Most recently, in *Armstrong v LeBlanc,* 395 Mich 526, 537; 236 NW2d 419 (1975), we reiterated our concern that plaintiff exercise reasonable care for his or her own protection, and we expressed our dissatisfaction "with the dogmatic application of the subsequent negligence doctrine".

However, where plaintiff did not detect the danger, the extrication requirement does not appear, even in the older cases. Thus, in *Montgomery v Lansing C E R Co,* 103 Mich 46; 61 NW 543 (1894), plaintiff, who was struck by defendant's car while

playing in a marching band, could recover because he did not hear the car approach. Allowance for plaintiff's error was carried even further in *Deadman v Detroit, J & C R Co,* 223 Mich 228, 231; 193 NW 778 (1923), where plaintiff was struck while repairing his employer's truck which had stalled on the railroad tracks. The court was clear in rejecting any plaintiff "should have known" approach when it said, "Under these circumstances can it be said that _he [plaintiff] was guilty of contributory negligence, as a matter of law, because he failed to look down the tracks during the minute he was at work in trying to remove the truck? We think not."[33]

The other side of the coin, where the court found for plaintiff in the presence of concurrent negligence by finding that contributory negligence was not applicable in the first place, is illustrated by *Gibbard v Cursan,* 225 Mich 311; 196 NW 398 (1923). In this case a defendant in a truck going 30 to 40 miles per hour overtook some school girls walking home along the edge of the road. He waited until the last minute before tooting his horn. The deceased turned left into the road and was hit and killed. Defendant pled contributory negligence and plaintiff pled gross negligence.[34]

*Gibbard* states the rule of "gross negligence" as follows:

---

[33] Compare to *Krouse v Southern Michigan R Co,* 215 Mich 139; 183 NW 768 (1921), where recovery was not permitted because plaintiff's decedent waited too long to try to leave her car which was stalled on the railroad tracks, even though she was warned the train was coming, and even though her husband, the other passenger in the car, had removed himself. 215 Mich 144.

[34] Because only ordinary contributory negligence of plaintiff may be set against the ordinary negligence of defendant to bar the action, by determining that defendant's conduct is different in kind, and is rather an "aggravated form of negligence, approaching intent" plaintiff's contributory negligence is no longer a bar to recovery. Prosser, The Law of Torts (4th ed), p 426.

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence— is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless, or wilful, but this is incorrect and has a tendency to mislead." 225 Mich 311, 320–321; 196 NW 398.

*Gibbard* then goes on to define "wilfully inflicted" as follows:

"According to note, 69 LRA 516, and text, 20 RCL, p 145, the elements necessary to characterize the injury in the case at bar as wilfully inflicted are:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' " 225 Mich 311, 322; 196 NW 398.

While *Gibbard* said it distinguished "wilful, wanton or reckless misconduct" from negligence, it accepted a definition of "wilful" couched in terms of ordinary negligence, except for the recognition that failure to exercise ordinary care would have dire consequences. Furthermore, it accepted the trial judge's calling such misconduct gross negli-

gence. Finally this Court affirmed the trial court and approved the verdict for plaintiff.

*Gibbard,* although it illuminates some things, does not do for the area of last clear chance what the drafters of the Restatement have done, *i.e.,* clarify the concept and provide workable guidelines for the finder of fact. Further, the Restatement Torts, 2d, §§ 479 and 480, eliminates some of the inconsistency and illogic which have become attached to the operation of this doctrine through the years.

## V—THE RESTATEMENT POSITION

### A. The Restatement Principles

The drafters of the Restatement Torts, 2d, have attempted a precise statement of the doctrine of last clear chance. Instead of testing to see whether plaintiff is barred by contributory negligence, their approach is more appropriately whether plaintiff can qualify under the doctrine of last clear chance. The distinction is subtle, but it clears the way for a more meaningful resolution of the problem.[35]

---

[35] Dean Prosser, in his role as Reporter to the Second Restatement, set forth the rationale for this approach, criticizing in particular the proximate cause position.

"The rules of the 'last clear chance' * * * represent an exception to the general rule that the plaintiff's contributory negligence bars his recovery. The exception had its origin in *Davies v Mann,* 10 M & W 546; 152 Eng Rep 588 (Ex, 1842), where the plaintiff left his ass fettered in the highway, and the defendant ran into it.

"Two explanations are commonly given for this departure from the general rule that contributory negligence bars recovery. One is that the later negligence of the defendant involves a higher degree of fault. This may be true in cases where the defendant has discovered the danger and his conduct approaches intentional or reckless disregard of it; but it fails to explain many cases in which his negligence consists merely of a failure to discover the situation at all, or in slowness, clumsiness, inadvertence, or an error of judgment in dealing with it. The other explanation is that the plaintiff's negligence is not a 'proximate' or legal cause of the harm to him, because the later negligence of the defendant is a superseding cause which relieves the

Further, the triers of fact will be able to apply the regular, reasonable person and ordinary care rule of negligence without having to speculate about gross negligence etc., or groping around the avenues of proximate cause.

We adopt the following two sections of the Restatement as properly stating the law of last clear chance in Michigan:

"§ 479. Last Clear Chance: Helpless Plaintiff

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

"(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

"(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

"(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

"(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise." Restatement Torts, 2d, § 479, p 530.

"§ 480. Last Clear Chance: Inattentive Plaintiff

"A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

"(a) knows of the plaintiff's situation, and

plaintiff of responsibility for it. This is quite out of line with modern ideas as to legal cause. Where the injury is to a third person, as for example a passenger in the actor's car, the fact that the actor has the last clear chance does not relieve the other driver of liability. * * * The causal relation can scarcely be otherwise where the injury is to the other driver himself.

"In reality the rules of the last clear chance appear to arise out of a dislike for the defense of contributory negligence, which has made the courts reject it in situations where they can regard the defendant's negligence as the final and decisive factor in producing the injury." 2 Restatement Torts, 2d, Comment, § 479, pp 530–531.

"(b) realizes * * * [36] that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm,[37] and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm." Restatement Torts, 2d, § 480, p 535.

## B. Acceptance of the Restatement Position

Section 479 has been almost universally accepted. The Reporter's Notes indicate that an equal number of courts has adopted the rule of the conscious last clear chance or discovered peril in (b)(i) and unconscious last clear chance in (b) (ii). Appendix, 479, p 333.

Although no Michigan case is cited, that is because we have not before expressly accepted the Restatement position. It is clear, however, that our cases accept both conscious and unconscious last clear chance. See *e.g., LaCroix v Grand Trunk W R Co,* 379 Mich 417, 437; 152 NW2d 656 (1967) (defendant "in the exercise of due care should have discovered plaintiff's situation"). Thus, our decisions have reached results consistent with this Restatement position.

As to § 480, the Reporter notes, "The rule stated in this Section is generally accepted." Appendix, § 480, p 348.[38] When we look at Michigan cases to

---

[36] We do not now consider the so-called "humanitarian doctrine" ("or has reason to realize", which we omitted above) which allows recovery where there is both an inattentive defendant and an inattentive plaintiff. Restatement, Second, Appendix, § 480, p 348.

[37] As long as circumstances indicate a reasonable chance that plaintiff will not extricate him or herself, defendant is not entitled to act on the assumption that plaintiff will awaken to the danger, but must avoid the accident. *See,* Restatement, Second, Comment, § 480, p 536.

[38] The so-called "humanitarian doctrine" is an exception to this general acceptance.

determine whether this Restatement rule is accepted in application, if not in name, we find evidence of some acceptance.

In *Deadman v Detroit, J & C R Co,* 223 Mich 228, 231; 193 NW 778 (1923), the court found that plaintiff could not be said to be guilty of contributory negligence as a matter of law, precisely because he failed to look down the railroad tracks to watch for approaching cars "during the minute he was at work" repairing the truck stalled on the tracks.

In *Battishill v Humphreys,* 64 Mich 514; 38 NW 581 (1888), recovery was permitted for a 2-year-old returning home on the tracks who was run over by a railroad car in broad daylight at a street-railroad crossing. Here, the court found that if defendants' testimony that they did not see the child[39] was to be believed, this failure to keep a proper lookout made them guilty of reckless negligence. Thus, the court held, the question of contributory negligence did not even arise, even if the child had been old enough for the law to impose a duty of due care on her. 64 Mich 514, 521; 38 NW 581.

In *Montgomery v Lansing C E R Co,* 103 Mich 46; 61 NW 543; 29 LRA 287 (1894), judgment for plaintiff was affirmed where he was injured by a streetcar while he was marching in a street parade playing a cornet. Testimony indicated plaintiff did not know the car was approaching. The court distinguished the situation from one where an individual attempted to cross in front of a car, observing that the motorman had seen the situation, had apprehended the danger, and yet, if plaintiff were to be believed, had done nothing to avoid the accident. 103 Mich 46, 54; 61 NW 543.[40]

---

[39] This is part of Michigan's doctrine of gross negligence and does not necessarily support the humanitarian principle.

[40] Some of our decisions have attempted to find a way for a plaintiff

The Restatement position in § 480 is limited enough, permitting plaintiff to receive the benefit of a last clear chance instruction only if defendant had actual knowledge of the situation and realized the danger, with knowledge to be construed from all the circumstances. The concept is apparently not foreign to our courts, and avoids the anomaly of preventing recovery when plaintiff didn't know of the peril, but of permitting recovery when plaintiff did know (assuming, of course, defendant's conduct was equally knowing and equally negligent in both situations). Since defendant's duty varies with the classification accorded plaintiff's status, this classification (whether plaintiff is helpless or inattentive) should be applied at the time defendant is first charged with knowledge of plaintiff's peril.

## C. Applying the Restatement

In applying the Restatement to the facts of this case, we hold, first, that the only threshold to cross is that plaintiff may possibly be contributorily negligent. It is no longer necessary to consider the "metaphysical vagaries which accompany categories of negligence termed *antecedent, concurrent,* and *subsequent intervening". Armstrong v Le-*

who did the wrong thing either through inattention or perhaps bad reflexes to recover anyway. For example, in *Gibbard, supra,* where the girl's negligence, if any, consisted in her moving to the left just before being struck, the court noted:

"[A]ssuming that she did, there was evidence that she was frightened, and in sudden peril. To one in such situation the law makes allowance for the *fright and lack of coolness of judgment incident thereto.* Perhaps if she had stepped to the right, as the other girls did, she would have escaped, but because of the sudden peril, it will not now be held, imperatively, that she should have done that." (Emphasis added.) 225 Mich 311, 317–318; 196 NW 398. *Contra, Krouse v Southern Michigan R Co,* 215 Mich 139, 144; 183 NW 768 (1921) (despite her husband's warning, plaintiff's decedent remained in a car stalled on the railway track until it was too late to get out).

*Blanc,* 395 Mich 526, 534; 236 NW2d 419 (1975). Once the determination of contributory negligence is made, a jury might apply either section.

For § 479, once plaintiff placed herself in a situation where she might be hit by defendant's car, the jury might find she was unable to get out of the vehicle's way because, for example, there was no safe means of escape or, once she apprehended the danger, it was too late to do anything about it. The jury would also have to find that defendant knew or should have known by the exercise of ordinary care that plaintiff was in trouble and that she could have avoided the accident by, for example, stopping or changing lanes.

To apply § 480, the jury would have to find that plaintiff, through her own negligence, did not know she was in trouble, that defendant knew plaintiff was in the path of the car and knew that Ms. Zeni, with her back to traffic, could not tell the vehicle was close to her and that, surrounded as she was by automobiles, could not be reasonably expected to move out of defendant's way. Once this determination was made, the jury would have to find that Ms. Anderson could have avoided the accident in order to find her liable.

## VI—CONCLUSION

We adopt today the two Restatement sections (with the exception of that which has been termed the "humanitarian principle"[41] which we leave open for consideration in an appropriate case) as the appropriate test for applying last clear chance. This brings Michigan into the mainstream of sound legal thinking on the subject and permits decision on the normal, reasonable person, ordi-

---

[41] *See* fns 36 and 38, *supra.*

nary care basis of negligence. Further, it makes
sure the courts retain sight of the original purpose
of the doctrine, that of mitigating the harshness of
contributory negligence. It also makes it easier for
the jury.

The trial court must determine only whether
plaintiff could fall into one of the categories to
which last clear chance may be appropriately
applied, and then should instruct the jury accord-
ingly.

The jury will be asked to determine if plaintiff
falls within one of the two Restatement categories,
that of helpless or of inattentive plaintiff, and
then, to decide if defendant's conduct meets the
appropriate standard which would give plaintiff
the benefit of the last clear chance doctrine. This
requirement shall be applicable to all future cases
in which the question of last clear chance is
raised, and SJI 14.01 may no longer be given.

However, whether the giving of the SJI
amounted to error in the instant case is another
question. While the jury was not specifically given
the then prevailing language concerning concur-
rent and subsequent negligence, in fact the jury
was instructed to find for plaintiff only if her
negligence did not proximately contribute to her
injury.[42] As we have seen, the concept of concur-

---

[42] Part of the instructions to the jury on point were:

"Your verdict will be for the plaintiff, Mrs. Zeni, if she was injured
or damaged and the defendant Karen was negligent, and *such negli-
gence was a proximate cause* of the plaintiff's injuries, unless the
plaintiff, Mrs. Zeni, herself was negligent and such negligence *proxi-
mately contributed* to her injuries. If the plaintiff herself was negli-
gent and such negligence *proximately contributed* to her injuries,
your verdict will be for the plaintiff only if the defendant was
subsequently negligent as previously explained in these instructions
and such subsequent negligence *proximately caused* the · plaintiff's
injuries.

"Your verdict will be for the defendants if the plaintiff, Mrs. Zeni,
was not injured; or if the defendant Karen was not negligent; or if
negligent, such negligence was not a proximate cause of the injuries;

rent negligence as related to subsequent negligence arose in our case law as another way of saying plaintiff's negligence may not be the proximate cause of his or her own injuries if last clear chance was to apply. That is precisely what the jury was told in the instant case.

We can well understand the Court of Appeals' discomfort at observing the panoply of instructions and various gyrations required in this case. The remedy is not, however, to reverse the work of a trial court striving mightily to make sense of oft-conflicting precedent, when, in effect, he guided the jury as the Court of Appeals wished him to. In future cases, the task of both judge and jury will be, we trust, simpler and more rational. The Court of Appeals is reversed and the trial court is affirmed. Costs to plaintiff.

KAVANAGH, C. J., and LEVIN and FITZGERALD, JJ., concurred with WILLIAMS, J.

RYAN, J., took no part in the decision of this case.

LINDEMER, J. *(dissenting)*. The trial court instructed the jury on subsequent negligence using standard jury instruction 14.01 over the objection of defendants. The jury returned a verdict as follows:

"We the jury find the defendant guilty of subsequent negligence. We rule in favor of the plaintiff in the amount of $30,000.00."

The jury therefore must have found that Mrs. Zeni

or if the plaintiff herself was negligent and such negligence was a *proximate contributing cause* of her injuries, and the defendant Karen was not subsequently negligent as previously explained in these instructions."

herself was negligent. There is absolutely no evidence in this case upon which reasonable minds could conclude that the negligence of Mrs. Zeni had terminated so that the negligence of the defendants could be subsequent. In light of this fact, the doctrine of last clear chance is not present in this lawsuit. This case is an inappropriate vehicle for the adoption of the approach of the American Law Institute found in the Restatement of Torts, 2d. If that approach is to be adopted in this state, it should be adopted by the Legislature.

I agree with the dissent in the Court of Appeals and would remand for entry of judgment *non obstante veredicto.*

COLEMAN, J. *(to affirm). In Armstrong v LeBlanc,* 395 Mich 526; 236 NW2d 419 (1975), we examined "the troublesome concept of subsequent negligence" and expressed "our dissatisfaction with the dogmatic application of the * * * doctrine" when the facts would demonstrate that plaintiff "in a dangerous position may not have exercised reasonable care for his own protection". We emphasized that such questions "are matters more appropriately determined by the triers of fact" and reversed the directed verdict against the defendant.[1]

This case also presents matters which are for the jury to determine. However, it is the trial judge's responsibility to instruct the jury correctly on the law *as it is at the time of trial.* As Judge HOLBROOK demonstrated in his majority opinion[2] for the Court of Appeals, the instruction in this

---

[1] Justice LINDEMER would remand for entry of a judgment n.o.v. I feel the Court of Appeals was correct in holding that the issue involved "is one of fact; therefore, we may not say that defendants are entitled to a judgment *non obstante veredicto* as a matter of law".

[2] 56 Mich App 283; 224 NW2d 310 (1974).

case "was insufficient as the elements of subsequent negligence were not fully explained".[3]

The trial court's instructions included these statements on subsequent negligence:

"Now, even though you find that Mrs. Zeni by her own negligence placed herself in a position of danger, that will not defeat her claim for damages if defendant Karen failed to use ordinary care with the means at hand after defendant knew or should have known of Mrs. Zeni's danger.

*   *   *

"If you find that the plaintiff, Mrs. Zeni, was contributorily negligent, as just stated in this instructions [sic], the plaintiff has the burden of proof on her claim that the defendant Karen was subsequently negligent * * * that is, that the defendant Karen failed to use ordinary care with the means at hand after she knew or should have known of the danger in which the plaintiff, Mrs. Zeni, was placed by her own contributory negligence.

*   *   *

"If the plaintiff herself was negligent and such negligence proximately contributed to her injuries, your verdict will be for the plaintiff only if the defendant was subsequently negligent as previously explained in these instructions and such subsequent negligence proximately caused the plaintiff's injuries.

"Your verdict will be for the defendants if the plaintiff, Mrs. Zeni, was not injured; or if the defendant Karen was not negligent; or if negligent, such negligence was not a proximate cause of the injuries; or if the plaintiff herself was negligent and such negligence was a proximate contributing cause of her injuries, and

[3] Compare my opinion in *Javis v Ypsilanti Board of Education,* 393 Mich 689; 227 NW2d 543 (1975), which found no error "when the charge actually given states correctly the law applicable to the case and covers the points which were proper".

the defendant Karen was not subsequently negligent as previously explained in these instructions."

The Court of Appeals' review of the case law demonstrated that "for the triers of fact to properly consider this problem, they should be instructed on the question of whether plaintiff's negligence had ceased to be a proximate cause of her injury". The jury was not specifically instructed on this point. They were not told that the doctrine of subsequent negligence "does not apply where the negligence of both parties is concurrent and proximately causes plaintiff's injury".

I agreed with the statement in *Armstrong* that the distinctions are accompanied by "metaphysical vagaries". The doctrine of subsequent negligence is a "troublesome concept". However, the instructions on this theory (admittedly difficult to administer) did not accurately state the law. Defendant preserved the issue by objection.

Justice WILLIAMS would reverse the Court of Appeals and affirm the verdict because he believes the trial judge "in effect * * * guided the jury as the Court of Appeals wished him to". I do not find that same "effect" and believe the jury was not fully instructed "as to the relevant factors to be considered" under the law as it existed at the time of trial.

I also believe that if we are to adopt the standards projected by Justice WILLIAMS, we should do so only after asking for comments from the bench and bar. I am satisfied that our decision in *Armstrong* provides adequate direction in this area, doing so in the context of previous decisions. Adoption of the Restatement sections would mark a departure and the use of some interestingly vague language. It should not be taken hastily. I would

seek the advice of those who must work with and apply such standards. The gloss on the traditional doctrine should be viewed with care and the merits and demerits weighed prior to adoption in this or another form *(e.g.,* standard jury instructions).

I am not opposed to the "last clear chance" doctrine. However, I would not superimpose it upon this case which was tried according to the doctrine of subsequent negligence. I also do not agree with all of the language in the new instruction. As Standard Jury Instruction 14.01 is to be abolished and the "last clear chance" doctrine substituted, it would be courteous and enlightening to receive comments prior to its official adoption.

I would affirm the Court of Appeals.