HACKLEY UNION NATIONAL BANK & TRUST COMPANY
*v.* WARREN RADIO COMPANY.

1. TRIAL—NEGLIGENCE—MOTION FOR DIRECTED VERDICT—EVIDENCE.
    Evidence will be viewed in the light most favorable to the party
    opposing motion for directed verdict at close of trial of a
    negligence case.

2. NEGLIGENCE—DEFINITION.
    Negligence is conduct that fails to measure up to an acceptable
    standard.

3. SAME—STANDARD OF CONDUCT—QUESTION FOR JURY.
    The standard of conduct employed in determining whether or
    not a person is guilty of negligence is that of a reasonably
    prudent man acting under the same or similar circumstances,
    and whether or not the standard has been attained is normally
    a jury question, it being permissible to take a case from the
    jury only under extreme circumstances where reasonable minds
    could not differ upon the facts or the inferences to be drawn
    therefrom.

4. SAME—SUDDEN EMERGENCY.
    The doctrine of sudden emergency is a logical extension of the
    reasonably prudent person rule and where applicable is to be
    applied to determine the issue of negligence or contributory
    negligence.

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 339.
[2] 38 Am Jur, Negligence § 2.
[3] 38 Am Jur, Negligence §§ 30, 345.
[4] 38 Am Jur, Negligence § 41.
[5] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 720, 721.
[6] 8 Am Jur 2d, Automobiles and Highway Traffic § 1016.
[7] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 761–767.
[8] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 761–767, 1016.
[9] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 687–691.
[10] 8 Am Jur 2d, Automobiles and Highway Traffic § 689.

5. AUTOMOBILES—ASSURED CLEAR DISTANCE—CONSTRUCTION OF STATUTES—SUDDEN EMERGENCY.

> The statutory rule requiring operation of automobile so as to be able to stop in the assured clear distance ahead must be reasonably construed and has been qualified by the test of due or ordinary care, exercised in the light of attending circumstances, such as the existence of a sudden emergency (CLS 1956, § 257.627, as amended by PA 1957, No 190).

6. SAME—NEGLIGENCE—SUDDEN EMERGENCY—QUESTION FOR JURY.

> Question of defendant's negligence *held*, properly submitted to jury in case where evidence favorable to defendant showed, if believed, that automobile ahead of defendant stopped suddenly in road without signal, that turn was intended, that defendant first saw such automobile after passing crest of hill which had obscured his vision of it, confronting him with sudden emergency, and that he attempted to stop but could not, and skidded into lane of oncoming traffic.

7. SAME—WRONG SIDE OF ROAD—STATUTE—SUDDEN EMERGENCY.

> Statute requiring persons to drive on right side of highway must be construed in a reasonable manner, and applied, taking into account all of the facts and surrounding circumstances, such as the existence of a sudden emergency, making a departure from the right side of the highway reasonable (CLS 1961, §§ 257.634, 257.635).

8. SAME—SUDDEN EMERGENCY—QUESTION FOR JURY—WRONG SIDE OF ROAD.

> Question of defendant's negligence in being on wrong side of road and colliding with car in which plaintiff was riding, *held*, properly submitted to jury in case where evidence favorable to defendant showed, if believed, that he was confronted with a sudden emergency by the sudden appearance of an automobile ahead of him a short distance, and by the sudden stopping of such automobile to make a turn, without signalling the turn, that he attempted to stop but could not, skidding into the wrong lane of traffic in the attempt.

9. SAME—FAILURE TO KEEP PROPER LOOKOUT—FAILURE TO DRIVE WITH REGARD TO CONDITIONS.

> Question of negligence of defendant as to allegations of failure to drive keeping a proper lookout and failure to drive with due regard to slippery conditions of pavement, *held*, properly submitted to jury in case where evidence concerning these claimed acts of negligence was conflicting.

10. SAME—SUDDEN EMERGENCY—NEGLIGENCE—EVIDENCE.

Verdict for defendant motorist who failed to stop behind car being driven in the same direction and which came to a sudden stop without warning it was about to turn, whereupon defendant's car skidded into oncoming traffic lane and collided with car in which plaintiff minor was a passenger, *held*, not against the great weight of the evidence (CLS 1956, § 257.627, as amended by PA 1957, No 190; CLS 1961, §§ 257.634, 257.635).

Appeal from Muskegon; Beers (Henry L.), J. Submitted Division 3 May 10, 1966, at Grand Rapids. (Docket No. 411.) Decided November 9, 1966.

Complaint by The Hackley Union National Bank & Trust Company, a national banking corporation, as guardian of the estate of Donald Brown, a minor, against Warren Radio Company, a Michigan corporation, and Randall J. Versen, for personal injuries sustained by Donald Brown when the car in which he was riding was struck by one driven by defendant Versen in the course of his employment by defendant Warren Radio Company. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Bunker & Rogoski,* for plaintiff.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendants.

HOLBROOK, P. J. This is a negligence action brought by the guardian of Donald Brown, a minor, as plaintiff against defendant and his employer for personal injuries allegedly sustained as a result of an automobile collision. At the close of the proofs plaintiff moved for a directed verdict on the issue of liability, claiming that defendant's own testimony established negligence as a matter of law. In oppo-

sition to the motion, defendants claimed that the issue of sudden emergency presented a fact issue for the jury.

The trial judge denied the motion and the jury returned a verdict of no cause of action. Plaintiff's motion for new trial was denied and plaintiff appeals raising the following questions for review: (1) Should the trial judge have granted plaintiff's motion for a new trial because he erred in denying plaintiff's motion for a directed verdict on the issue of liability? (2) Should the court have granted plaintiff's motion for a new trial because the verdict was against the great weight of the evidence?

The pertinent facts appear to be as follows: On June 13, 1958, Donald Brown, then 11 years of age, was a passenger in an automobile driven by his father in an easterly direction on the Heights-Ravenna Road, in the county of Muskegon. The Heights-Ravenna Road is intersected by a north-south highway known as Cloverville Road. A driveway, located 400 feet west of the Cloverville Road, runs off the south side of the Heights-Ravenna Road into the parking lot of the Cloverville Baptist Church. Just east of the Cloverville Road, is a rise in the Heights-Ravenna Road where it passes over the crown of a hill.

A witness, Mrs. Katherine Betts, was driving her automobile west on the Heights-Ravenna Road, intending to make a left turn into the church driveway. On direct examination she testified that she began to slow down for the turn into the driveway when she came over the hill on the Heights-Ravenna Road; that she stopped in her own lane to wait until the automobile in which plaintiff was a passenger passed in the opposite direction; that she signaled her intention to turn by extending her arm out the window of the car; and that the first time she saw defendant's car, which was coming up behind her, was when

it was alongside of her own car in the opposite lane.
With reference to the signal of intention to turn,
Mrs. Betts could not definitely say whether she gave
a signal or not, but believes she did "because it had
become a habit" and because her window was down.
On cross-examination, it was pointed out that in a
deposition taken from her in December of 1963, she
testified that she did not signal with her arm. The
vehicle which she was driving did not have mechan-
ical signal devices. Defendant testified that, at the
scene of the accident, he called the investigatory
officer's attention to the fact that the windows in the
Betts car were closed. At the time, there was a
slight rain falling and the pavement was uniformly
wet. Mr. Hollie Brown, plaintiff's father, testified
that when he first saw the Betts car it was almost
opposite from the church driveway, and at almost
the same instant he saw the defendant's car just
"breaking over the rise" on the Heights-Ravenna
Road. The witness estimated the speed of defend-
ant's vehicle to be approximately 65-70 miles per
hour. At this moment, Mr. Brown was approxi-
mately 50 feet west of the Betts vehicle. When
defendant's vehicle was approximately 200 feet west
of the Cloverville Road, Mr. Brown testified that he
saw it begin to skid and slide into his lane of
traffic; that he drove his own vehicle half off the
road; but that in spite of his evasive tactics a
collision nevertheless ensued at a point some 30 feet
east of the church driveway. Mr. Brown also testi-
fied that the Betts vehicle came to a gradual stop and
that Mrs. Betts signaled her intention to turn with
a hand signal. On cross-examination, however, it
was brought out that in a deposition taken in De-
cember of 1963, Mr. Brown stated that he did not
make an estimate as to the speed of defendant's
car. Moreover, the deposition also contains the
statement that "I was a little bit quizzical whether

she was going to turn in front of me or not, and I stopped and I proceeded on."

The defendant Randall Versen testified that he was driving west between 40 and 50 miles per hour on the Heights-Ravenna Road; that when he came over the hill he noticed the Betts car going at a slower rate of speed; that he began to slow down in case the Betts vehicle stopped; that the Betts car stopped suddenly; and that he stepped on his brakes as hard as he could, causing his vehicle to veer sideways into the eastbound lane of traffic. Further, defendant Versen stated that Mrs. Betts did not give a hand signal, and testified also that he first saw the Betts vehicle when he came over the hill. Although both Mrs. Betts and Mr. Versen were travelling in the same direction on the Heights-Ravenna Road for 2 miles, defendant did not see Mrs. Betts until he came over the hill east of the Cloverville Road. Versen did not see the Brown car until his own automobile was in the left lane. Plaintiff claims that the defendant's negligence was the proximate cause of injuries to the minor's back which will prevent him from attaining the full potential of his future earning power. Defendant produced expert testimony to the effect that plaintiff suffers from spondylolisthesis, a congenital condition of the back which began to develop during infancy and which will continue to get worse in the future. The witness also testified that plaintiff's abnormal spinal structure would have progressed to its present stage with or without the intervention of a traumatic incident.

Plaintiff contends that as a matter of law the defendant's own testimony shows that he was acting in a negligent manner in the following respects: (1) Defendant failed to operate his vehicle so as to be

able to stop within the assured clear distance ahead.[1]
(2) Defendant operated his vehicle on the wrong
side of the highway.[2] (3) Defendant failed to keep
a proper lookout. (4) Defendant failed to drive his
automobile with due regard to the slippery condi-
tions of the pavement.

In opposition to these contentions defendant
argues that there was a question of fact as to
whether he was placed in a position of peril to
which he did not contribute and therefore, the ap-
plication of the sudden emergency rule would excuse
him from liability.

It is necessary to determine if the plaintiff is
correct and that defendant was guilty of negligence
as a matter of law which required the granting of a
directed verdict as to liability against defendant.

Upon a motion for directed verdict at the conclu-
sion of the trial of a negligence case, the evidence
will be viewed in the light most favorable to the
party opposing the motion. *Romero* v. *King* (1962),
368 Mich 45, *Cole* v. *Austin* (1948), 321 Mich 548.

Our Supreme Court has defined negligence on
many occasions and has indicated on what conditions
a verdict can be directed. In the case of *McKinney*
v. *Yelavich* (1958), 352 Mich 687, Mr. Justice TALBOT
SMITH, on pp 691, 692, stated as follows:

"The case before us is unusual, however, in the
clarity with which is revealed the source of much of
our error. We have tried to substitute specific roles
of behavior for a general standard of care. All will
agree, of course, that negligence is conduct that
fails to measure up to an acceptable standard. The
standard now employed by the law is that of a rea-
sonably prudent man acting under the same or

---

[1] CLS 1956, § 257.627, as amended by PA 1957, No 190 (Stat Ann
1957 Cum Supp § 9.2327).
[2] CLS 1961, §§ 257.634, 257.635 (Stat Ann 1960 Rev §§ 9.2334,
9.2335).

similar circumstances. Whether or not the standard has been attained is, normally, a jury question. Only under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the jury. If honest differences of opinion between men of average intelligence might exist, the issue should not be resolved by the court alone."

The doctrine of sudden emergency is a logical extension of the reasonably prudent person rule and where applicable is to be applied to determine the issue of negligence or contributory negligence.

Whereas, at one time, the application of the statute (assured clear distance) was strictly construed and applied as evidenced by the rule in the case of *Lewis* v. *Yund* (1954), 339 Mich 441, recent cases indicate that the statute must be reasonably construed and exceptions to the statutory edict have been created to accomplish justice, including bringing the assured clear distance rule to qualification by the test of due or ordinary care, exercised in the light of the attending conditions. *Sun Oil Company* v. *Seamon* (1957), 349 Mich 387; *Nass* v. *Mossner* (1961), 363 Mich 128; *Dismukes* v. *Michigan Express, Inc.* (1962), 368 Mich 197.

In resolving the question before this Court, we turn to a similar case, *Hunt* v. *Deming* (1965), 375 Mich 581, involving a rear-end collision, for guidance. Therein, as plaintiff came over a hill, a stalled car was pushed into his path from a driveway. Since there was a curve in the road at that point, plaintiff naturally stopped to await the removal of the obstacle. Defendant had been following plaintiff for some distance, but lost sight of plaintiff's vehicle when it went over the hill. When defendant came over the hill, he began to slow down but did not notice that plaintiff was stopped until he was ap-

proximately 150 feet behind plaintiff, at which time he attempted to bring his vehicle to a halt. Naturally, a rear-end collision resulted. Defendant did not see the stalled car in the road. The jury found for defendant, and plaintiff appealed claiming that defendant was guilty of negligence as a matter of law by reason of being unable to stop within the assured clear distance ahead. The Supreme Court affirmed, holding that the jury was entitled to find that defendant was operating his vehicle in a reasonably prudent manner under the circumstances, and that his response to an emergency was reasonable, thereby excusing compliance with the requirement of the statute.

In the instant case, viewing the evidence in the light most favorable to defendant, the following facts can be inferred. The defendant was driving at a speed of from 40 to 50 miles per hour when he came over the hill on Heights-Ravenna Road. The defendant was not aware of the Betts vehicle until he came over the hill. As to the distance between the defendant's vehicle and plaintiff's vehicle, there is a dispute in the testimony. Plaintiff's father testified that approximately 200 feet separated the Versen and Betts vehicles when defendant came over the hill. On direct examination, defendant said he came over the hill, saw Mrs. Betts' car and prepared to slow up. Suddenly, without signal, Mrs. Betts came to an abrupt halt and defendant jammed on his brakes. On cross-examination, defendant said Mrs. Betts was just past the Cloverville Road when he first saw her. It is 10 feet from the crest of the hill to the eastern edge of Cloverville Road. Cloverville Road is a two-lane highway and therefore should be approximately 20 feet wide, making a total distance of at least 30 feet. Mrs. Betts was "just past" Cloverville Road and therefore 30 feet would be the minimum distance.

Pertinent inferences most favorable to defendant are that Mrs. Betts did not signal her intention to turn, that she stopped suddenly and that defendant started to slow down but could not stop.

In both *Hunt v. Deming, supra,* and the instant case, defendant came over a hill and was confronted by a stopped car. In *Hunt,* the defendant hit the stopped vehicle while in the instant case defendant skidded around the stopped car. Also, in the *Hunt · Case, supra,* the distance between the vehicles was 400 feet. In this case, the maximum distance between the two cars was 200 feet.

The rule permitting the jury to determine negligence as applied in the *Hunt Case, supra,* is applicable to the case at hand. The submission of the emergency rule to the jury was proper.

Now it is true, as plaintiff claims, defendant was on the wrong side of the highway at the time of the collision. However, our Supreme Court has ruled in *Martiniano v. Booth* (1960), 359 Mich 680, that the mere fact that a car is on the wrong side of the road at the time of the collision does not by itself make the driver guilty of negligence as a matter of law. The issue as to how the driver got on the wrong side of the road is factual and for the jury. In any event the violation of the statute must be the proximate cause of the injury.

We conclude that the statute requiring a vehicle to be driven on the right side of the highway, should be applied in a reasonable manner taking into consideration all of the facts and surrounding circumstances *i.e.,* how the driver got on the wrong side of the road and whether it was caused by an emergency situation. The question of such negligence under the evidence in this case presented a fact question for the jury to determine.

As to the asserted claims of plaintiff, that defendant failed to keep a proper lookout and failed

to drive his automobile with due regard to the slippery conditions of the pavement, we determine that the evidence concerning these claimed acts of negligence is conflicting and presented issues of fact properly resolved by the jury.

The claim that plaintiff's motion for new trial should have been granted because the verdict was against the great weight of the evidence is untenable under the evidence in this case. Competent and material testimony, viewed in the most favorable light to defendant justified the submission of the issues to the jury for determination.

We conclude that no error was committed and that the verdict was not against the great weight of the evidence.

Judgment affirmed. Costs to appellees.

J. H. GILLIS and FITZGERALD, JJ., concurred.