POPLAWSKI v HURON CLINTON METROPOLITAN AUTHORITY

1. TRIAL—JURY—STANDARD JURY INSTRUCTIONS—CIVIL ACTION.

   Standard jury instructions are required to be given in civil cases when applicable, accurate and requested.

2. TRIAL—JURY—JURY INSTRUCTIONS—EVIDENCE—TRIAL COURTS—
   RULER OF LAW—CIVIL ACTION—SUFFICIENT LEGAL EXCUSE—
   NEGLIGENCE—PRIMA FACIE EVIDENCE—NEGLIGENCE AS MATTER
   OF LAW—STATUTES.

   The trial court, as ruler of law, in a civil action for injuries sustained in a pedestrian-motorcycle accident where the defendant is charged with violating the statute requiring an individual to drive on the right side of a roadway has the initial duty to examine the evidence presented to see if a sufficient legal excuse exists therein, and if there is, the trial court should give a "violation as prima-facie evidence of negligence" instruction, and if there is not a sufficient legal excuse, the trial court should give a "violation as negligence as a matter of law" instruction (MCLA 257.634; MSA 9.2334).

Appeal from Oakland, James S. Thorburn, J. Submitted June 16, 1977, at Detroit. (Docket No. 30470.) Decided September 21, 1977. Leave to appeal applied for.

Complaint by Terry Poplawski against Huron Clinton Metropolitan Authority and Dale M. Coulston seeking damages for injuries sustained in a pedestrian-motorcycle accident. Judgment for plaintiff. Defendants appeal. Affirmed.

*Turner & Turner, P. C.* (by *Donald A. Turner* and *Carol Petsko),* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 604, 608–610.

[2] 57 Am Jur 2d, Negligence §§ 8, 9.

*Wilson, Portnoy, Basso & Leader, P. C.,* for defendants.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

PER CURIAM. Defendants appeal as of right a $340,741.40 judgment entered against them pursuant to a September 1, 1976, jury verdict. Defendants also appeal an order entered by the trial court denying their motion for a judgment notwithstanding the verdict or for a new trial.

This case arose out of a 1973 pedestrian-motorcycle accident which occurred at Metropolitan Beach, a recreational facility operated by defendant Huron Clinton Metropolitan Authority. The driver of the motorcycle, a three-wheeled vehicle owned by the authority, was defendant Dale Coulston. Coulston was employed by the authority as a harbor master at Metropolitan Beach and was working in that capacity at the time of the accident.

At trial, plaintiff testified that she and her fiance at the time, William Tomashitis, went to Metropolitan Beach to play golf. However, upon their arrival, the couple found the course too crowded and decided to go home. They walked down a sidewalk toward the parking lot where Tomashitis had parked his car. When they got to a road that separated the golf course from the parking lot, they stopped. Plaintiff testified that before stepping out into this road she looked both ways for oncoming traffic. Seeing no traffic, she and Tomashitis proceeded to the center line. Once there she paused again and looked to her right because that was where the traffic "was supposed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to be coming from". No vehicles were approaching from that direction so she began to cross the last half of the highway. As she did, she was struck by Coulston's vehicle.

According to plaintiff's former fiance, the road where the accident occurred was 24 feet wide with a center line at 12 feet. He testified that after crossing to the center line, he too looked to the right for traffic but saw none. Plaintiff was on his right and two or three feet behind him as they continued across the balance of the road. He testified that when he was about three feet from the curb, plaintiff yelled out to him. He turned in time to see her rolling on the ground and Coulston's vehicle skidding down the road. In his estimation, from the crosswalk where the accident occurred there was a clear, unobstructed view of about 300 feet up the road in the direction from which the harbor master had come.

Defendant Coulston testified that shortly before the accident he received a radio call directing him to the park's roller rink where a fight was occurring. He got on his three-wheeled vehicle and drove down the road, in the righthand lane, at 25 to 30 miles per hour. When he got to the area where the highway separated the golf course from the parking lot, he saw plaintiff and her fiance first at the curb, then (when he was approximately 30 to 40 feet from them) at the center line. According to Coulston, when he saw Tomashitis looking at him, he went into the lefthand lane "because I felt I could keep myself in their sight by going that way rather than backwards".

Coulston admitted that plaintiff was in the crosswalk of the left lane when she was struck by the handlebar and right rear fender of his vehicle. He said that he did not apply his brakes prior to

impact and added that although his motorcycle had a horn, it was inoperable on the day of the accident.

In his request to charge, defense counsel asked that the following jury instruction be given in the event that the jury was advised of a motorist's statutory duty to drive on the right half of a roadway:[1]

"In applying the statute I have just given to you to this case, while it is true as plaintiff claims the defendant was on the wrong side of the road at the time of the collision, the mere fact he was on the wrong side of the road at the time of the collision does not by itself make him guilty of negligence as a matter of law. The statute requiring a vehicle to be driven on the righthand side of the roadway must be applied in a reasonable manner, taking into consideration all of the facts and surrounding circumstances, including how the driver came to be on the wrong side of the roadway and his purpose in doing so."

The trial court refused to give this instruction, explaining that it was "merely a different way of saying that if the negligence as a matter of law is not a proximate cause of the occurrence then they obviously should not take it into consideration, because they have already been charged that it must be a proximate cause of the injury and damage".

The trial court advised the jury of the statute requiring an individual to drive on the right side and then instructed:

"If you find that the plaintiff or the defendant violated any of these rules of law before or at the time of the occurrence, then the plaintiff or the defendant, as the case may be, was negligent as a matter of law. You

[1] MCLA 257.634; MSA 9.2334.

must decide whether such negligence was a proximate cause of the occurrence.

"If you find that the defendant was confronted with a sudden emergency not of his own making, and if you find that he used ordinary care and was still unable to avoid the violation of a rule of law because of such emergency, then his violation is excused."

It should be noted that the instructions are virtually identical to SJI 12.01 and 12.01(A). Standard Jury Instructions are required to be given in civil cases when applicable, accurate, and requested. *Javis v Board of Education of the School District of Ypsilanti,* 393 Mich 689, 697; 227 NW2d 543 (1975). The issue before this Court is whether SJI 12.01 and 12.01(A) are accurate and applicable to this factual situation.

An analysis of that issue must begin with the Supreme Court's holding in *Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976), involving a pedestrian-automobile accident. As in this case, a dispute arose over the legal effect to be given to statutory violations (if so found by the jury). The Supreme Court held:

"An analysis of the Michigan cases indicates that the real Michigan rule as to the effect of violation of a penal statute in a negligence action is that such violation creates only a prima facie case from which the jury may draw an inference of negligence. It is true that a number of passages in cases speak of negligence per se almost in terms of strict liability, but closer examination of the application of the rule reveals that Michigan does not subscribe to such a harsh dogma." (Footnote omitted.) 397 Mich at 128–129.

As noted above, the precise statute alleged to have been violated in this case is MCLA 257.634; MSA 9.2334. In its discussion of the violation of a

statute as a rebuttable presumption, the Supreme Court in *Zeni* had occasion to examine that statutory provision. The Supreme Court noted:

> "For example, over a 65-year period, cases concerning the effect in a negligence action of violation of the statute requiring vehicles to keep to the right side of the road have almost consistently adopted a rebuttable presumption approach, even though the language of the statute is not written in terms of a presumption." (Footnote omitted.) 397 Mich at 130.

After an examination of pertinent cases, the Supreme Court then concluded that "the only question * * * [is] not whether an excuse would be acceptable, but what an acceptable excuse would be". (Footnote omitted.) 397 Mich at 131.

A superficial interpretation of the *Zeni* holding cited above would seem to require reversal in this case. However, a more thorough analysis of *Zeni* convinces us that there are additional factors which preclude reversal.

In *Zeni* the Supreme Court bolstered its conclusion as to MCLA 257.634; MSA 9.2334, in a footnote citing *Hackley Union National Bank & Trust Co v Warren Radio Co,* 5 Mich App 64; 145 NW2d 831 (1966). In that case, plaintiff contended that as a matter of law defendant's own testimony proved negligence when the defendant admitted driving on the wrong side of the highway. Defendant argued that application of the sudden emergency doctrine created a question of fact for the jury to decide. This Court concluded:

> "Now it is true, as plaintiff claims, defendant was on the wrong side of the highway at the time of the collision. However, our Supreme Court has ruled in *Martiniano v. Booth,* 359 Mich 680 [103 NW2d 502] (1960) that the mere fact that a car is on the wrong side

of the road at the time of the collision does not by itself make the driver guilty of negligence as a matter of law. The issue as to how the driver got on the wrong side of the road is factual and for the jury. *In any event the violation of the statute must be the proximate cause of the injury.*

"We conclude that the statute requiring a vehicle to be driven on the right side of the highway, should be applied in a reasonable manner taking into consideration all of the facts and surrounding circumstances *i.e.,* how the driver got on the wrong side of the road and whether it was caused by an emergency situation. The question of such negligence under the evidence in this case presented a fact question for the jury to determine." (Emphasis added.) 5 Mich App at 73.

To further strengthen its position that a violation of a statute constitutes a rebuttable presumption of negligence in a civil case, the Supreme Court quoted with approval Justice (then Judge) FITZGERALD's opinion in *Lucas v Carson,* 38 Mich App 552; 196 NW2d 819 (1972). There, in spite of defendant's precautions, her car rear-ended plaintiff's stopped vehicle. This Court discussed the effect of MCLA 257.402; MSA 9.2102:

"Under this statute, a motorist who collides with the rear end of another vehicle traveling ahead and in the same direction is presumed negligent. Both parties admit that this statute was applicable under the facts pertaining in the case at bar. The presumption raised by this statute is, of course, a rebuttable one. *Garrigan v LaSalle Coca-Cola Bottling Co,* 362 Mich 262 [106 NW2d 807] (1961), *Patzer v Bowerman-Halifax Funeral Home,* 370 Mich 350 [121 NW2d 843] (1963). However, the usual grounds relied upon for rebuttal of this presumption are encompassed in the so-called 'sudden emergency doctrine', which does not appear in the instant case.

"Defendants contend, however, that the 'sudden emergency doctrine' is not the sole basis for rebutting

the presumption of negligence arising from the rear-end collision statute." 38 Mich App at 556–557.

This Court then concluded:

"Although the issue presented here is a close one, the trial court was correct in its decision that there was sufficient evidence on the issue of reasonable care to present a factual consideration for the jury and to preclude a directed verdict for plaintiff as a matter of law. Although the statutory presumption of negligence was certainly not rebutted by defendants' evidence as a matter of law, the trial court decided that there was sufficient evidence at least to generate a jury question regarding rebutting of the presumption." 38 Mich App at 557.

Plaintiff's complaint in *Lucas v Carson, supra,* alleged that defendant also violated MCLA 257.627; MSA 9.2327 (the assured clear distance statute) and MCLA 257.643; MSA 9.2343 (the "following-too-closely" statute).

In *Lucas, supra,* quoting *Hackley, supra,* at 71, this Court noted the standard applicable when interpreting the above-cited statutes:

"Whereas, at one time, the application of the statute (assured clear distance) was strictly construed and applied as evidenced by the rule in the case of *Lewis v Yund,* 339 Mich 441 [64 NW2d 696] (1954), recent cases indicate that the statute must be reasonably construed and exceptions to the statutory edict have been created to accomplish justice, including bringing the assured clear distance rule to qualification by the test of due or ordinary care, exercised in the light of the attending conditions. *Sun Oil Co v Seamon,* 349 Mich 387 [84 NW2d 840] (1957), *Nass v Mossner,* 363 Mich 128 [108 NW2d 881] (1961), *Dismukes v Michigan Express, Inc,* 368 Mich 197 [118 NW2d 238] (1962)." 38 Mich App at 558.

Applying that standard, this Court held:

"Since there was at least some evidence that defendant driver was operating her vehicle in a reasonable and prudent manner prior to the accident, the question of whether or not defendant violated one or both of these statutes was properly a factual one for the jury to resolve." *Id.*

It is evident that *Hackley* and *Lucas* strongly argued against the concept that a finding of negligence as a matter of law would then completely foreclose the issue from the trier of fact. Thus, the Supreme Court's opinion in *Zeni v Anderson, supra,* with its citation to *Hackley* and *Lucas* can justifiably be characterized as a further attempt to emphasize the notion that irrebuttable presumptions are disfavored in this context.

Although we realize that the trial court did not carry out that goal of the Supreme Court with precision, we hold that the combination of instructions given by the trial court insured that defendants would not be victimized by an outmoded irrebuttable presumption. Accordingly, we affirm the verdict of the jury below.

While it is admitted that the trial court gave the disfavored "negligent as a matter of law" instruction, the trial court also instructed that the negligence had to be a proximate cause of the occurrence. The trial court properly defined "proximate cause". Therefore, defendants could not be found liable as a result of the statutory violation without a showing that defendant Coulston's negligent conduct resulted in plaintiff's injury. Furthermore, the trial court gave the "sudden emergency" instruction. While it may be admitted that as a matter of law the instruction was inapplicable

here,[2] the precise language of the instruction would seem to allow for the broadest possible excuse. The jury could excuse if there was "a sudden emergency not of his own making" as long as Coulston used ordinary care and still couldn't avoid it.[3] Defendants cannot complain about the instruction as it is more than they were entitled to. To review, the combination of instructions by the trial court satisfied its duty to instruct on the law of the case and did not constitute reversible error.

We acknowledge a reluctance to merely apply a strictly literal reading of *Zeni v Anderson, supra*, because an expansive interpretation of that case appears to allow juries virtually unfettered discretion to excuse violations of statutes. We feel that the trier of fact needs greater guidance than is present in the Supreme Court's opinion in *Zeni*. In other jurisdictions,[4] the trial court, as ruler of law,

[2] *Manning v Cheboygan Area Schools*, 76 Mich App 700, 703; 257 NW2d 222 (1977), notes:

"*VanderLaan v Miedema*, 385 Mich 226; 188 NW2d 564 (1971), sets out several principles involved when a party asserts the doctrine of sudden emergency. First, we must view the facts in the light most favorable to defendants. Second, those facts must indicate that·the circumstances attending the accident were either 'unusual' or 'unsuspected.' An example of an 'unusual' circumstance is a blizzard. 'Unsuspected' means a suddenly revealed and totally unexpected peril."

The facts in this case disclose neither unusual nor unsuspected circumstances.

[3] *The Michigan Standard Jury Instructions—Civil* note five categories of factual situations where the "sudden emergency" instruction, SJI 12.01(A), should be modified. None of these situations are found in this case.

[4] *Alarid v Vanier*, 50 Cal 2d 617; 327 P2d 897 (1958), *Northern Indiana Transit, Inc v Burk*, 228 Ind 162; 89 NE2d 905 (1950), *Herman v Muhs*, 256 Iowa 38; 126 NW2d 400 (1964), *Snook v Long*, 241 Iowa 665; 42 NW2d 76 (1950), *Kisling v Thierman*, 214 Iowa 911; 243 NW 552 (1932), *Tarr v Keller Lumber & Construction Co*, 106 W Va 99; 144 SE 881 (1928), *Landry v Hubert*, 101 Vt 111; 141 A 593 (1928). *See also*, Morris, *The Role of Criminal Statutes in Negligence Actions*, 49 Col L Rev 21 (1949).

has the initial duty to examine the evidence presented to see if a sufficient legal excuse exists therein. If there is, the trial court will give the "violation as prima-facie evidence of negligence" instruction. If there is not, the trial court will give the "violation as negligence as a matter of law" instruction. We believe this to be the proper procedure to be followed in cases of this type. Therefore, until explicitly told otherwise by the Supreme Court, we limit *Zeni v Anderson* to its facts and find it inapplicable to this case.[5]

We note finally that we feel this result is proper inasmuch as defendant admits *Zeni v Anderson, supra,* was not published until after the jury instructions in this case were completed. As far as the trial court knew, prior law was *not* settled. In fact "some of our Michigan cases seem[ed] to present negligence per se as an unqualified rule". *Zeni, supra,* at 143. The trial court can hardly be faulted for relying, especially in light of *Javis,* on the Standard Jury Instructions.

Affirmed. No costs.

---

[5] It should be noted that *Zeni* makes the most sense in its own factual context, a last-clear chance situation, where the trier of fact has certain circumscribed duties to perform.