# STATE OF MICHIGAN

# COURT OF APPEALS

JACK ESTES,

       Plaintiff-Appellant,

v

DANIEL RICHARD GREEN and PAUL
RICHARD GREEN,

       Defendants-Appellees,

and

FREEMONT INSURANCE COMPANY,

       Defendant.

UNPUBLISHED
July 5, 2018

No. 336595
Monroe Circuit Court
LC No. 15-137994-NI

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In this third-party vehicle negligence case, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants[1] based on the sudden emergency doctrine and because defendants were not more than 50% at fault, as statutorily required in order to assess damages against them. We affirm.

On January 18, 2015, plaintiff was operating a black homemade vehicle on the roadway. It was around dusk when a truck owned by defendant, Paul Green, and driven by defendant, Daniel Green, came around a corner in the roadway to see a vehicle in front of them swerve suddenly and reveal plaintiff on his vehicle in the roadway. The Green vehicle hit plaintiff from behind, causing plaintiff significant injuries.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10) on the issues of sudden emergency and comparative negligence. They argued that after coming around a bend

---

[1] "Defendants" refers to Daniel Richard Green and Paul Richard Green, as Freemont Insurance Company was dismissed by stipulation early in the lawsuit and is not a participant in this appeal.

-1-

in the roadway and while traveling below the posted speed limit, the vehicle in front of them suddenly swerved, revealing plaintiff on a homemade (unlicensed, unregistered) vehicle that had no lights or reflectors. Defendants contended that a sudden emergency caused them to hit plaintiff and that the police report and accident reconstructionist found plaintiff to be intoxicated at the time of the accident and at fault for the accident. According to defendants, because a sudden emergency not of their making caused the accident or, alternatively, because plaintiff was more than 50% at fault for the accident, the claims against them must be dismissed.

Plaintiff responded that the defendant driver admitted that he was speeding at the time of the accident and that additionally, plaintiff testified that he was not operating the vehicle on the roadway at the time of the accident but was, instead, stopped on the shoulder of the roadway. The accident reconstructionist also testified that he could not be certain as to the point of impact, i.e., whether it was on the roadway. Plaintiff thus argued that summary disposition could not be granted in defendants' favor under the standard set forth in MCR 2.116(C)(10).

The trial court, however, found that defendants were faced with a sudden emergency in coming around a turn and having a vehicle in front of them suddenly swerve, then not being able to stop and avoid a dark, unilluminated vehicle in the roadway after sunset. The trial court also found that defendants were not more than 50% at fault, as required by statute, in order to assess damages. The trial court noted that plaintiff was operating an unregistered motor vehicle that did not conform to safety regulations, after dark, and while intoxicated. Thus, the trial court dismissed plaintiff's claims against defendants and this appeal followed.

Plaintiff first contends that the trial court erred in granting defendants' motion based on the sudden emergency doctrine. We need not necessarily reach the sudden emergency doctrine with respect to one of the statutes plaintiff relies upon for imposing liability — the rear end collision statute — because that statute is inapplicable under the specific facts of this case. We disagree, however, with plaintiff's contention that application of the sudden emergency doctrine to the assured-clear-distance statute was in error.

This Court reviews de novo decisions on summary disposition motions. *AFSCME v Detroit*, 468 Mich 388, 398; 662 NW2d 695 (2003). A court reviewing a motion under MCR 2.116(C)(10) "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993).

A statutory presumption of negligence applies when a vehicle rear ends another vehicle:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator. [MCL 257.402(a)]

The above statute applies, by its own terms, *only* when the vehicle overtaken was either proceeding in the same direction or lawfully standing upon the highway. MCL 257.402. Plaintiff contends that he was not traveling in the same direction but was instead stopped. In order for MCL 257.402 to be applicable, then, plaintiff must have been lawfully standing upon the highway. In *Harmon v Stanley*, 56 Mich App 602, 605; 224 NW2d 658 (1974), when discussing what "lawfully standing upon the highway" in that statute meant, this Court referenced MCL 257.672. MCL 257.672 states, in part:

> (1) Outside of the limits of a city or village, a vehicle shall not be stopped, parked, or left standing, attended or unattended, upon the paved or main traveled part of the highway, when it is possible to stop, park, or to leave the vehicle off the paved or main traveled part of the highway. Inside or outside of the limits of a city or village, a vehicle shall not be stopped, parked, or left standing, attended or unattended, upon the paved or unpaved part of a limited access highway, except in an emergency or mechanical difficulty.

Plaintiff testified at his deposition that the vehicle he was riding on was not legal to operate on a roadway and that he stopped to light a cigarette. He also testified that he was not on the roadway at the time of the accident. If he was actually stopped *on* the travelled portion of roadway to light his cigarette, it was clearly possible for plaintiff to assure that his vehicle was "off the paved or main traveled part of the highway." That being so, he would not be entitled to a presumption that defendant was negligent under MCL 257.672. If plaintiff *was not* on the roadway, then he was not overtaken by a vehicle proceeding in the same direction and MCL 257.402(a) is likewise inapplicable.

The assured-clear-distance statute is found at MCL 257.627 and provides, in relevant part:

> (1) A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. A violation of this subsection shall be known and may be referred to as a violation of the basic speed law or "VBSL".

While a violation of the assured-clear-distance statute constitutes negligence per se, the statute must be reasonably construed and is not applicable in all circumstances. *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). As this Court pointed out:

> Whereas, at one time, the application of the statute (assured clear distance) was strictly construed and applied as evidenced by the rule in the case of *Lewis v Yund*, 339 Mich 441; 64 NW2d 696 (1954), recent cases indicate that the statute must be reasonably construed and exceptions to the statutory edict have been created to accomplish justice, including bringing the assured clear distance rule to qualification by the test of due or ordinary care, exercised in the light of the attending conditions. [*Lucas v Carson*, 38 Mich App 552, 558; 196 NW2d 819

(1972) (quoting *Hackley Union Nat'l Bank & Trust Co v Warren Radio Co*, 5 Mich App 64, 71; 145 NW2d 831 (1966)]

One articulated circumstance rendering the assured-clear-distance statute can be found when a collision is shown to have occurred as the result of a sudden emergency. *Vander Laan*, 385 Mich at 231.

"The sudden-emergency doctrine is a judicially created principle that excuses a defendant's negligent conduct because of an unexpected emergency that requires an immediate response and makes it impossible to take other reasonable action to avoid the danger." *Socony Vacuum Oil Co v Marvin*, 313 Mich 528, 546; 21 NW2d 841 (1946). In other words, this doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendant's own making. *White v Taylor Distributing Co, Inc*, 482 Mich 136, 139–140; 753 NW2d 591 (2008). To fall within the sudden emergency doctrine, the circumstances of the accident must present a situation that is "unusual or unsuspected." *Vander Laan*, 385 Mich at 232. The *Vander Laan* Court explained the meanings of the terms "unusual" and "unsuspected" with respect to the sudden emergency doctrine as follows:

> The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature. A classical example of the 'unusual' predicament envisioned by the emergency doctrine is provided by *Patzer v Bowerman-Halifax Funeral Home*, [370 Mich 350; 121 NW2d 844 (1963)]] wherein the accident occurred amid an Upper Peninsula blizzard.

> 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clearview for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v Anderson*, [373 Mich 414; 129 NW2d 851 (1964)] where defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100-200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant. [*Id*. at 232]

"When the trial court undertakes to eliminate from the jury's consideration a statutory presumption as a matter of law, at the very least there must be clear, positive, and credible evidence opposing the presumption." *White*, 275 Mich App at 621. Where, on the other hand, the evidence is not clear, positive, and credible, "the issue of overcoming the rear-end presumption should be settled in the jury room." *Id*. at 621–622.

-4-

Here, there was clear, positive and credible evidence opposing the presumption of negligence under the assured-clear-distance statute. Defendants submitted the deposition testimony of Daniel Green, who testified that the accident occurred on southbound Lewis Avenue. On southbound Lewis Avenue, immediately before a curve, there is a sign recommending that the speed around the curve be 35 mph. Daniel testified that he started slowing down to about 40 or 45 mph right before the curve. He testified that there was a car in front of him and the car swerved suddenly. At that point Daniel was in the curve and saw plaintiff riding down the road on his vehicle directly in front of him. According to Daniel, he hit his brakes and turned his wheel but it was too late to avoid hitting plaintiff.

Sergeant Daniel Zydbek of the Monroe County Sheriff's Office testified at deposition that he is certified in accident reconstruction and arrived at the scene of the accident shortly after it occurred. It was close to dark when he arrived and he took photographs and measurements. Sergeant Zydbek testified that the speed limit in the area where the accident occurred was 55 mph. He indicated that there was a yellow sign with black lettering that provided a lower speed limit at the curve, but testified that those signs are suggestions for safety reasons rather than an actual, enforceable speed limit. Sergeant Zydbek made no determination of the speed of either vehicle at the time of the accident. He did, however, make a determination as to the location of the accident. According to Sergeant Zydbek, based on scrapes and gouge marks in the roadway, the accident location was on the southbound lane, near the fog line, at the very edge of the lane. He testified that there was no evidence to suggest that at the time of impact, plaintiff's vehicle was on the shoulder of the road. Instead, the evidence located in the roadway suggested that the impact point was within the travel lane. He testified that the skid marks at the scene were conclusive as to the area of impact and suggested significant and perhaps abrupt braking.

Sergeant Zydbek additionally testified that he did not believe plaintiff's vehicle was licensed nor would it be eligible for licensing. He testified that the vehicle would be categorized as an off road vehicle and could not be legally operated on a public roadway. According to Sergeant Zydbek, the plaintiff was not eligible to be on the roadway and that he was thus determined to be at fault.[2]

---

[2] While the parties and Sergeant Zydbek refer to plaintiff's vehicle as a homemade minibike, it appears to qualify as a moped. The Michigan Vehicle Code defines a "motor vehicle" as "every vehicle that is self-propelled . . . ." "Moped" means a 2- or 3-wheeled vehicle that is equipped with a motor that does not exceed 100 cubic centimeters piston displacement and cannot propel the vehicle at a speed greater than 30 miles per hour on a level surface and has a power drive system does not require the operator to shift gears. MCL 257.32b. A moped is required to be registered with the state, MCL 257.801e and MCL 257.216, and is required to have at least one headlamp, MCL 257.685(2), and one rear stop lamp, MCL 257.697b. Because the moped was not registered and met none of the illumination requirements, plaintiff was illegally on the road and would have been determined to be at fault in any event.

Deputy Ryan Sottile of the Monroe County Sheriff's Department testified that he spoke to Daniel Green at the accident scene and Daniel told him he was traveling southbound on Lewis Avenue when the vehicle in front of him swerved suddenly. Daniel stated that an unlit minibike was right in front of him and that he slammed on his brakes but could not stop in time to avoid hitting the bike. Deputy Sottile testified that Paul Green confirmed these events. Deputy Sottile testified that the speed limit at the accident location was 55 mph and that Daniel estimated his speed at approximately 50 mph.

Deputy Sottile testified that as he stood over plaintiff, he could smell the odor of intoxicants. Blood tests taken at the hospital showed that plaintiff had a blood alcohol level of .15. Sottile testified that the minibike was homebuilt and rudimentary; it was not a legal vehicle to be on the roadway.

Plaintiff testified that he built the vehicle using a frame and lawnmower engine. It had no headlights, taillights or reflectors, was painted black, and was not registered with the state. He testified that he would ride it around his town of Ida, on the village streets, quite often before the accident. He also acknowledged that it was not legal for him to be driving the vehicle on the paved portion of a highway.

Plaintiff testified that on the day of the accident, he had ridden the vehicle to the gas station, then to the park, then to his friend's house. As to the accident, plaintiff testified that at the time of the accident (January 18 at approximately 5:50 p.m.) it was not dark yet and not quite dusk. He had ridden the vehicle to his friend Brian Clare's house and acknowledged that he had been drinking beer at home earlier that day. He could not recall how much he had to drink. He had just left Brian's barn and had ridden across the street and stopped on the side of the road to get a cigarette out of his pocket. That is the last thing he remembers.

Given the testimony of defendants, there was clear, positive, and credible evidence opposing the statutory presumption of negligence in MCL 257.627, allowing the trial court to take the question of whether the sudden emergency doctrine applied away from the jury. *White*, 275 Mich App at 621. While plaintiff asserts that defendant Daniel Green was speeding at the time of the accident, both Sergeant Zydbek and Deputy Sottile testified that the speed limit where the accident occurred was 55 mph. The only evidence presented was that Daniel Green was going 50 mph or less when the accident occurred. There is signage suggesting that drivers slow to 35 mph around the curve, but both officers testified that the sign is a recommendation, not an enforceable speed limit. Moreover, the accident occurred just after the curve, not in it.

Plaintiff also states that there is conflicting testimony concerning where the accident occurred so that there is a question of fact as to whether the sudden emergency doctrine applies. The only evidence indicating that the accident occurred somewhere other than on the roadway is plaintiff's deposition testimony wherein he stated he was stopped on the side of the road to light a cigarette. However, plaintiff's blood alcohol level was .15 at the time of the accident, which likely affected his judgment about where he could stop and possibly affected his memory of where he actually stopped, and plaintiff testified that he does regularly ride the vehicle on the roadway. The fact that the car in front of defendants' allegedly had to swerve is evidence that plaintiff was on the roadway; if he was on the shoulder there would have been no need for the car to swerve. There were no marks or debris on the shoulder, only the roadway, and plaintiff's

friend, Brian Clare, testified that he saw the truck slide by his driveway immediately after the impact and it was on the roadway, not the shoulder. Moreover, as stated earlier, Sergeant Zydbek, who arrived shortly after the accident, took measurements and photographs of gouge and yaw marks and concluded, based on the evidence at the scene, that the accident took place in the roadway. When a motion is brought under MCR 2.116(C)(10), the reviewing court must consider "the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Id*. Plaintiff offered no substantively admissible evidence to rebut the evidence presented by defendants concerning the location of the accident or defendants' speed at the time of the accident.

Plaintiff also asserts that the there was nothing unusual or unsuspected about the situation, as is required for application of the sudden emergency doctrine. See *Vander Laan*, 385 Mich at 232. As explained in *Vander Laan*, "unsuspected" for purposes of the sudden emergency doctrine contemplates a potential peril that had not been in clear view for any significant length of time, and was totally unexpected. *Id*. at 232.

Interestingly, plaintiff asserts that "more than one vehicle driving ahead of a vehicle is far from unsuspected. Indeed, two or more vehicles driving ahead of a vehicle are not only suspected, but common." This would suggest an argument that plaintiff was driving in the roadway and his presence there was not unsuspected. However, plaintiff's primary position is that he was not driving in the roadway, but was instead stopped on the side of the road when the accident happened.

In any event, it is true that "[i]t is not merely an 'abrupt stop' by a preceding vehicle (if it is in its proper place on the highway) that rebuts or dissipates the presumption that the negligence of the rear driver was the sole proximate cause of a rear-end collision. It is a sudden stop by the preceding driver at a time and place where it could not reasonably be expected by the following driver that creates the factual issue." *Hill v Wilson*, 209 Mich App 356, 360; 531 NW2d 744 (1995).

First, plaintiff's vehicle was not in a proper place in the roadway. All parties agree that the vehicle was painted black, had no headlights, taillights or reflectors, was powered by a push lawnmower engine, and was not legally on the road. Second, defendants testified that they were coming around a curve when the vehicle in front of them swerved suddenly, revealing plaintiff on his vehicle in the roadway directly in front of them. Photos of the road and the accident diagram by police show that the accident took place just after the curve in the roadway. While the parties dispute exactly how dark it was when the accident occurred, it can be agreed that the accident occurred shortly before 5:50 p.m. on January 18.

Accepting that plaintiff was on the roadway at the time of the accident for purposes of this argument, it can easily be found that it would be unsuspected to a driver, driving at or below the posted speed limit, coming around a curve, to happen upon an unlit vehicle illegally in the roadway. Due to the curve, the peril would not have been in view for any length of time (in addition to defendant's claim of a vehicle in front of them suddenly swerving). While another car, traveling at the same speed or even at a much lower speed would be expected to be

encountered if a vehicle did swerve, an unlit vehicle like plaintiff's traveling at the speed of a push lawnmower would not. The trial court thus appropriately found in favor of defendant on the existence of the sudden emergency doctrine.

Even if the issue of the sudden emergency doctrine were a factual determination for the jury, summary disposition would still have been appropriate in defendants' favor because there was no evidence from which a jury could find that plaintiff was less than 50% at fault in the accident.

As stated by our Supreme Court:

Under Michigan's No-Fault Act at MCL 500.3135(2)(b), "Damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." In addition, MCL 600.2955a provides:

(1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.

(2) As used in this section:

***

(b) "Impaired ability to function due to the influence of intoxicating liquor or a controlled substance" means that, as a result of an individual drinking, ingesting, smoking, or otherwise consuming intoxicating liquor or a controlled substance, the individual's senses are impaired to the point that the ability to react is diminished from what it would be had the individual not consumed liquor or a controlled substance. An individual is presumed under this section to have an impaired ability to function due to the influence of intoxicating liquor or a controlled substance if, under a standard prescribed by section 625a of the Michigan Vehicle Code, Act No. 300 of the Public Acts of 1949, being section 257.625a of the Michigan Compiled Laws, a presumption would arise that the individual's ability to operate a vehicle was impaired.

The doctrine of comparative fault requires that every actor exercise reasonable care. *Hierta v Gen Motors Corp (On Rehearing),* 196 Mich App 20, 23; 492 NW2d 738 (1992). A defendant attempting to mitigate his liability through a comparative fault defense has the burden of alleging and proving that another person's conduct was a proximate cause of the plaintiff's damages. *Lamp v Reynolds*, 249 Mich App 591, 599; 645 NW2d 311 (2002). "The question of a plaintiff's negligence for failure to use due care is a question for the jury unless no reasonable

minds could differ or the determination involves some ascertainable public policy considerations. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008).

Plaintiff argues that a reasonable juror could find that he was less than 50% at fault in the accident because it was dusk, Daniel Green was speeding, the accident occurred on the shoulder of the road, and plaintiff was stopped on the shoulder at the time of the accident. The lack of admissible evidence concerning these speculations has been previously discussed at length and the police report noted that plaintiff was at fault for the accident. Plaintiff's demonstrated negligence, on the other hand, was extraordinary. He was operating in the roadway, at a point situated in a curve that limited visibility. He was intoxicated, on an unregistered vehicle and operating it after sunset without any lights or reflective devices whatsoever. Given the admissible evidence provided regarding the location and circumstances surrounding he accident and the fact that plaintiff's ability to function is presumed to be impaired due to his alcohol level, the trial court did not err in finding that plaintiff was 50% or more at fault for the accident.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto